**Cheryl REEVES, Appellant,**

v.

**MIDDLETOWN ATHLETIC ASSOCIATION and Roy Jenderko, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 1, 2004.

Filed Dec. 15, 2004.

Reargument Denied Feb. 22, 2005.

Michael J. Brooks, Doylestown, for appellant.

Jill G. Weitz, Philadelphia, for Jenderko, appellee.

Before: MUSMANNO, OLSZEWSKI and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Cheryl Reeves appeals from the entry of summary judgment on October 21, 2003, in favor of Appellee Roy Jenderko.[1] Appellant also challenges the propriety of the trial court's demurrer of count III of her amended complaint. Upon review, we reverse in part, and remand for further proceedings.

¶ 2 The relevant facts and procedural history of this case are as follows: In 1994, Appellant, aged 12, was a pitcher for Middletown Magic Softball team, which was coached by Appellee. The team was a member of the Middletown Athletic Association (MAA). In addition to coaching softball, Appellee offered private softball pitching lessons to children for a fee of $20.00 per hour. Appellant's parents enlisted Appellee as Appellant's private pitching coach, and these private pitching sessions lasted until 1996. In 1997, Appellant played softball for her high school, but she returned to the Magic in 1998. However, in mid-season, Appellee dismissed Appellant from the Magic because he felt that her behavior at a tournament was disruptive to the Magic. Following her dismissal, Appellant pitched for another local softball team.

¶ 3 Due to her dismissal from the Magic, Appellant filed suit against Appellee, MAA, and MAA's board members *via* complaint on April 12, 2001. In the five-count complaint, Appellant alleged various causes of action sounding in breach of contract, negligence, and also alleging several intentional torts. Appellant's complaint also sought punitive damages on the breach of contract claim. Appellee and

1. Although designated in the caption of this case as an appellee, Middletown Athletic Association has settled its case with Appellant and is not a party to the present appeal. Therefore, we will refer to Roy Jenderko as the sole Appellee.

MAA filed preliminary objections to Appellant's complaint, and Appellant filed an amended complaint on July 13, 2001. Thereafter, Appellee and MAA filed preliminary objections to Appellant's July 13, 2001 complaint. On February 20, 2002, the trial court granted Appellee's preliminary objections in part and struck Appellant's demand for punitive damages (requested for all counts of the complaint) and count III of Appellant's complaint. The trial court also sustained Appellee's preliminary objections as to count IV of the complaint but granted Appellant leave to amend the complaint. Appellant withdrew count V of the complaint voluntarily. The trial court overruled the remainder of Appellee's preliminary objections.[2]

¶ 4 After the trial court's February 20, 2002 order, Appellant filed an amended complaint on March 15, 2002. Appellant's amended complaint alleged the following causes of action: (1) breach of express and implied contract due to Appellee's teaching Appellant an illegal softball-pitching style; (2) negligence on the part of Appellee (and MAA) for permitting Appellee to teach an illegal and injurious style of softball pitching; (3) fraud; and (4) negligence on the part of Appellee (and MAA) because they removed Appellant from the Magic.

¶ 5 Appellee filed a timely answer to Appellant's amended complaint and raised a new matter. Appellant responded to Appellee's new matter *via* preliminary objections. By stipulation of the parties, Appellee amended his answer and new matter. Thereafter, on June 19, 2002, Appellants filed a second set of preliminary objections. On September 5, 2002, following a hearing, the trial court denied Appellant's preliminary objections. After the trial court denied her preliminary objec-

tions, Appellant filed a reply to Appellee's new matter.

¶ 6 On April 8, 2003, MAA filed a motion for summary judgment against Appellant. Thereafter, on April 23, 2003, Appellee filed a motion for summary judgment against Appellant. Appellant responded to MAA's motion for summary judgment on May 8, 2003, and to Appellee's motion for summary judgment on May 23, 2003. On July 1, 2003, after filing her responses to Appellees' summary judgment motions, Appellant filed a motion to compel Appellee to answer fully a previous set of interrogatories filed by Appellant during discovery. Appellee filed a response to Appellant's motion to compel on July 10, 2003. In the response, Appellee contended that, in his previous set of answers to Appellant's interrogatories, he either answered or objected to Appellant's interrogatories properly, and, therefore, Appellant was not entitled to relief.

¶ 7 Prior to the trial court's ruling on Appellant's motion to compel, the trial court granted Appellee's and MAA's motions for summary judgment on October 21, 2003. The trial court's order denied all other pending motions, including Appellant's motion to compel, as moot. Notice of the trial court's judgment was sent to the parties on October 24, 2003. Nevertheless, it appears the trial court's judgment was not entered on the docket until November 26, 2003. Therefore, on December 15, 2003, Appellant filed a notice of appeal to this Court. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, but it did author an opinion in this case. Following the filing

---

**2.** Also at this time, Appellant discontinued her suit against the individual board members of MAA.

of Appellant's notice of appeal, she settled her case with MAA.

¶ 8 The issues Appellant presents for our review are as follows:

1. Whether [Appellant's] appeal is timely[?]

2. Whether count III of the [complaint] should have survived preliminary objections[?]

3. Whether the motion [for summary judgment] was decided prior to the completion of discovery relevant to the motion and rightfully decided without oral argument[?]

4. Whether [Appellant, who bears the burden of proof at trial,] has produced evidence of facts essential to the causes of action[?]

Appellant's brief, at 5.[3]

 ¶ 9 We consider first whether Appellant's appeal was timely. It is apparent, following a review of the record, that Appellant's appeal was timely. Generally, the time for appeal commences following the *entry* of a final order. *See Wilson v. Wilson*, 828 A.2d 376, 377 (Pa.Super.2003). For this purpose, an order is "entered" when it has been docketed and notice of the docketing has been given to the parties. *See Yeaple v. Yeaple*, 485 Pa. 399, 403, 402 A.2d 1022, 1024 (1979). Although Appellant concedes that she received notice of the trial court's judgment on October 24, 2003, she contends that the order was not entered on the docket until November 26, 2003, and, therefore, her notice of appeal was timely filed. In the present case, Appellant provided three offers of proof in the form of three certified copies of the trial court's docket entries for November 11, 25, and 26, 2003.

¶ 10 These docket entries indicate that, as of November 11, 2003, and until November 25, 2003, the trial court's October 21, 2003 order granting summary judgment was not yet docketed. However, on the docket entries for November 26, 2003, the docket entries reflect that the order was entered properly on October 21, 2003, the date that it was issued. Accordingly, it appears that the October 21, 2003 order was "backdated" by the prothonotary of the trial court to correspond with the date of its issuance.

¶ 11 Our Supreme Court was presented with an analogous factual situation in *Frazier v. City of Philadelphia*, 557 Pa. 618, 735 A.2d 113 (1999). In *Frazier*, on April 7, 1997, Frazier, who filed a civil rights action against the City of Philadelphia and a former officer of the Philadelphia City Police Department, obtained a default judgment in the amount of $45,000.00 against the former officer. *Id.*, at 619, 735 A.2d at 114. The order granting judgment was entered on the docket on April 8, 1997, and notice of the order was mailed to and received by the parties. *Id.*, at 619, 735 A.2d at 114. The prothonotary, however, failed to indicate on the docket, as required by Rule 236(b) of the Pennsylvania Rules of Civil Procedure, that notice of the order had been provided to the parties. *Id.*, at 620, 735 A.2d at 114.

¶ 12 Thereafter, on October 8, 1997, Frazier filed a petition in the Commonwealth Court seeking permission to appeal *nunc pro tunc* from the April 8, 1997 judgment. *Frazier*, at 620, 735 A.2d at 114. Frazier asserted, *inter alia*, that he was entitled to *nunc pro tunc* relief because the docket did not reflect that notice of the trial court's order had been given as required by Rule 236(b). *Id.*, at 620, 735 A.2d at 114. The Commonwealth Court denied Frazier's petition and stated in its order that the appeal was premature, as the

---

**3.** We have renumbered Appellant's issues.

docket failed to reflect that notice of the entry of the trial court's order had been provided to the parties in accordance with Rule 236(b). *Id.*, at 620, 735 A.2d at 114.

¶ 13 After the Commonwealth Court's disposition, the prothonotary entered a "corrective" notation in the docket which set forth the required Rule 236(b) notice. *Frazier*, at 620, 735 A.2d at 114. Within thirty days after the entry of this "corrective" notation, Frazier filed a notice of appeal to the Commonwealth Court. *Id.*, at 620, 735 A.2d at 114. The Commonwealth Court, following a motion by the City of Philadelphia, dismissed the appeal as untimely filed, noting that Frazier's counsel received the April 8, 1997 order within thirty days of its issuance. *Id.*, at 620, 735 A.2d at 114. Thereafter, Frazier sought and obtained allowance of appeal to the Pennsylvania Supreme Court limited to the issue of whether the thirty-day appeal period commences upon docketing of a judgment order where the prothonotary has failed to note that the appropriate notice has been sent to the parties. *Id.*, at 620, 735 A.2d at 114.

¶ 14 On review, our Supreme Court concluded that Frazier's appeal was timely filed due to the prothonotary's error. *Frazier*, at 621, 735 A.2d at 114. Our Supreme Court held the following:

Rule of Appellate Procedure 301(a) provides that "no order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court." *See generally Sidkoff, Pincus, et al. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 521 Pa. 462, 468, 555 A.2d 1284, 1287 (1989). Further, Rule of Appellate Procedure 108(b) designates the date of entry of an order, for purposes of appeal, as follows:

(b) **Civil orders.** The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure

shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b).

Pa.R.A.P. 108(b). As previously noted, Rule of Civil Procedure 236(b) describes the prothonotary's obligation to "note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents."

Thus, pursuant to the express terms of the rules, an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given. *See* [*Yeaple*, at 403, 402 A.2d at 1024]; *see also Speight v. Burens*, 371 Pa.Super. 478, 481 n. 3, 538 A.2d 542, 543 n. 3 (1988); *cf. Hepler v. Urban*, 518 Pa. 482, 484–85, 544 A.2d 922, 923 (1988) (finding that, where there is no indication in the docket that notice has been provided in accordance with Rule 236, an order granting summary judgment was not final). *That the parties may have received notice of the order does not alter the formal date of its entry and the associated commencement of the period allowed for appeal for purposes of the rules.* The procedural requirements reflected in the rules serve to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether an appeal was perfected in a timely manner, thus eliminating the need for a case-by-case factual determination. *See generally Commonwealth v. Dorman*, 272 Pa.Super. 149, 153–54, 414 A.2d 713, 716 (1979).

In the present case, although Frazier received notice of the April 8 judgment, because there was no corresponding entry in the docket, formal entry of the order did not occur under the rules, and

the appeal period was not triggered. The [P]rothonotary's attempt to post-date the corrective docket entry cannot be given effect, as to do so would act in circumvention of the rules. Since Frazier perfected the present appeal within thirty days after the actual notation upon the docket pursuant to Rule 236(b), such appeal was timely.

*Frazier*, at 621–22, 735 A.2d at 114 (emphasis added).

¶ 15 Accordingly, when we view the present case in light of *Frazier*, it is clear that Appellant's appeal was timely. Appellant's offers of proof indicate that, as of November 25, 2003, no entry was present on the docket for the trial court's October 21, 2003, judgment and there was no entry indicating that the required Rule 236(b) notice was sent to the parties. Accordingly, Appellant's notice of appeal, filed within thirty days after the entry of the judgment and the Rule 236(b) notice, was timely. *Frazier*, at 621–22, 735 A.2d at 114. Accordingly, as we have determined that Appellant's appeal was timely filed, we will turn to an analysis of the remainder of Appellant's issues.

■■■ ¶ 16 Appellant asserts next that count III of her July 13, 2001 complaint was stricken improperly following the trial court's grant of Appellee's preliminary objection in the nature of a demurrer. Our review of this issue is governed by the following standard:

> When reviewing the dismissal of a complaint based upon preliminary objec-

tions in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Goodman v. PPG Indus.*, 849 A.2d 1239, 1243 (Pa.Super.2004) (citations omitted).

■■■ ¶ 17 Count III of Appellant's July 13, 2001 complaint raised a claim of intentional infliction of emotional distress.[4] There remains some question as to whether the courts of this Commonwealth recognize a cause of action for intentional infliction of emotional distress. *See, e.g., Hoy v. Angelone*, 554 Pa. 134, 150–51 n. 10, 720 A.2d 745, 753–54 n. 10 (1998). However, our Supreme Court has indicated that in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. *Id.*, at 151, 720 A.2d at 754.[5] In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's out-

---

4. In addition to her intentional infliction of emotional distress claim, Appellant raised in count III an alternate cause of action for negligent infliction of emotional distress. *See* Appellant's complaint, 7/13/2001, at 22. Nevertheless, she makes no argument regarding the propriety of the trial court's striking of this alternate cause of action.

5. "Outrageous or extreme conduct" has been defined by the appellate courts of this Commonwealth as conduct that is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *See Hoy*, at 151, 720 A.2d at 754 (citing *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987)).

rageous conduct. *Fewell v. Besner*, 444 Pa.Super. 559, 664 A.2d 577, 582 (1995).

¶ 18 A review of Appellant's complaint indicates that she alleged that she suffered "serious and permanent injury" as a result of Appellee's outrageous conduct, but does not specify what type of injury she suffered nor the time at which she suffered it in relation to Appellee's conduct. *See* Appellant's complaint, 7/13/2001, at 22, ¶ 168. Therefore, she failed to state a cause of action for intentional infliction of emotional distress. *See Fewell*, 664 A.2d at 582. Accordingly, Appellant's first argument fails.

¶ 19 Moreover, we are unable to find that the trial court abused its discretion by striking count III from Appellant's complaint without leave to amend because Appellant has failed to specify how she would have amended the complaint in a manner so as to allow it to survive preliminary objections. *See Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 624 (Pa.Super.1999). Where one seeks to amend their complaint but fails to specify how they would amend it, it cannot be shown how the amendment would change a reviewing court's conclusions regarding the granting of preliminary objections. *Id.*, 736 A.2d at 624. Therefore, we decline to reverse the decision of the trial court. *Id.*, 736 A.2d at 624. Accordingly, Appellant's claim fails.

¶ 20 Appellant asserts next that the trial court abused its discretion by deciding Appellee's motion for summary judgment without conducting oral argument on the motion and abused its discretion by deciding the motion prior to the completion of discovery. A review of the record indicates that Appellee and MAA requested oral argument on the motions pursuant to Bucks County Local Rule 266, but Appellant did not request oral argu-

ment. Therefore, Appellant may not argue error on the part of the trial court for failing to grant oral argument on the motions. *See Godlewski v. Pars Mfg. Co.*, 408 Pa.Super. 425, 597 A.2d 106, 108 (1991) (holding that where party fails to request oral argument on summary judgment motion pursuant to local rule, party may not later complain that trial court erred in failing to grant oral argument on summary judgment motion). Therefore, we dismiss Appellant's argument.

¶ 21 We are also satisfied that the trial court did not abuse its discretion by deciding Appellee's summary judgment motion prior to the completion of discovery. A review of the record indicates that both parties to this litigation sought discovery during the preliminary objection stage of pleading. *See, e.g., Kubik v. Route 252, Inc.*, 762 A.2d 1119, 1123 (Pa.Super.2000) (discovery may commence during preliminary objection stage of pleading). On April 11, 2002, Appellee and MAA propounded a set of requests for production of documents and interrogatories on Appellant, and Appellant responded shortly thereafter. Appellant propounded the discovery requests in question on Appellee on May 3, 2002, and May 8, 2002, in the form of document requests and interrogatories. Appellee responded to these requests in a timely fashion on June 3, 2002. Thereafter, on October 1, 2002, Appellant served additional interrogatories and requests on Appellee, which requests Appellee presented responses to on October 28, 2003. Appellant did not seek to compel further information from Appellee regarding his answers to those requests until July 1, 2003, several months after Appellee filed his motion for summary judgment, and approximately one and a half months after Appellant's filing of her response to the motion for summary judgment.

¶ 22 Although parties must be given reasonable time to complete discovery before a trial court entertains any motion for summary judgment, the party seeking discovery is under an obligation to seek discovery in a timely fashion. *Kerns v. Methodist Hosp.*, 393 Pa.Super. 533, 574 A.2d 1068, 1074 (1990). Where ample time for discovery has passed, the party seeking discovery (and opposing summary judgment) is under an obligation to show that the information sought was material to their case and that they proceeded with due diligence in their attempt to extend the discovery period. *Id.*, 574 A.2d at 1074.

¶ 23 Appellee's summary judgment motion was filed approximately two years after Appellant filed suit against him and approximately one year after discovery began in this case (April 11, 2002). Appellant's discovery request was filed after Appellee filed his motion for summary judgment and after Appellant responded to Appellee's motion. Thus, Appellant was afforded seven months between the filing of Appellee's answers to Appellant's second set of discovery requests (filed October 28, 2002) until the Appellee's summary judgment motion (filed April 23, 2003) in order to seek additional information from Appellee regarding his answers to Appellant's interrogatories, or to seek and provide additional discovery, but she failed do so. Accordingly, we are satisfied that the approximate seven-month gap provided Appellant adequate time to seek additional answers to her interrogatories. *Kerns*, 574 A.2d at 1074. Thus, we conclude that discovery was *complete* at the time Appellee filed his summary judgment motion. Therefore, in order to extend the discovery period, Appellant was obliged to demonstrate that the information she sought to discover was material to their case and that she proceeded with due dili-

gence in attempting to obtain the information. *Kerns*, 574 A.2d at 1074.

¶ 24 Other than several bald statements that the information sought was "arguably germane" to her causes of action, Appellant makes no meaningful argument to this Court as to the materiality of the information sought. We will not consider these bald assertions in our analysis of this issue. *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa.Super.2003). Further, although Appellant's response to Appellee's summary judgment includes a request to the trial court for an extension of the discovery period, Appellant does not indicate in her response the efforts that she took, if any, to obtain the information sought. Moreover, Appellant does not indicate to this Court the efforts she undertook to procure the information from Appellee. Accordingly, we decline to find that the trial court abused its discretion when it decided Appellee's motion for summary judgment without first ruling on Appellant's motion to compel answers. *See Kerns*, 574 A.2d at 1074. Therefore, Appellant's argument fails.

¶ 25 Lastly, Appellant asserts next that the trial court's grant of summary judgment in favor of Appellees for her remaining claims was in error. Our review of Appellant's issue is governed by the following standard:

A reviewing court may disturb the [entry of summary judgment] only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of

law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof [. . .] establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Downey v. Crozer–Chester Medical Center,* 817 A.2d 517, 524 (Pa.Super.2003) (citations and quotation marks omitted).

¶ 26 As stated above, Appellant's second amended complaint alleged the following causes of action: (1) breach of express and implied contract due to Appellee's teaching Appellant an illegal softball-pitching style; (2) negligence on the part of Appellee for teaching an illegal and injurious style of softball pitching; (3) negligence on the part of Appellee for removing Appellant from the Magic; and (4) fraud.

■■■■ ¶ 27 Generally, for a plaintiff to maintain a successful cause of action for breach of contract, the plaintiff must demonstrate the following: (1) the existence of a contract between the plaintiff and defendant, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from a breach of that duty. *See CoreStates Bank v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.1999). It is undisputed that a written contract did not exist between Appellant and Appellee. Moreover, Appellant concedes that, contrary to the averments presented in her second amended complaint, an oral contract did not exist between herself and Appellee for pitching lessons but, instead,

that the contract was between her *parents* and Appellee for the provision of pitching lessons to Appellant. Thus, it is clear that Appellant cannot prevail on a breach of contract claim because no contract existed between herself and Appellee. Therefore, Appellant's claim for breach of contract cannot survive summary judgment. *Id.,* 723 A.2d at 1058.

■■■■ ¶ 28 On appeal, Appellant attempts to argue that she was the third-party beneficiary of an oral contract between her parents and Appellee, and, therefore, she is entitled to relief due to Appellee's alleged breach of the contract. We disagree. Appellant has not presented facts essential to preserve a third-party beneficiary breach of contract claim in her second amended complaint. A review of the second amended complaint indicates that it lacks any discussion regarding the formation of the putative contract between Appellee and Appellant's parents. Moreover, the second amended complaint fails to specify that the right conferred to Appellant by the putative contract was appropriate to effectuate the intent of her parents and Appellee in the execution of the putative contract or that the performance of the putative contract by Appellee intended to give Appellant the benefit of his promised performance. *See Davin v. Davin,* 842 A.2d 469, 473 (Pa.Super.2004) (To demonstrate third-party beneficiary status, one must show the following: (1) recognition of putative beneficiary's right must be appropriate to effectuate the intention of contracting parties, and (2) the performance by the promisee must satisfy obligation of the promisee to pay money to the beneficiary or circumstances must indicate that promisee intends to give the beneficiary the benefit of promised performance.) (citation omitted). Therefore, as Appellant's second amended complaint is devoid of facts sufficient to prevail on a

third-party beneficiary theory, we find this argument waived. *See Estate of Swift by Swift v. Northeastern Hosp.*, 456 Pa.Super. 330, 690 A.2d 719, 723 (1997) (not necessary that complaint identify the specific legal theory of the underlying claim; however complaint must apprise defendant of claim being asserted and summarize essential facts to support claim, and if plaintiff fails to plead separate cause of action properly, the cause he did not plead is waived). Accordingly, we are satisfied that the trial court did not err when it granted summary judgment in Appellee's favor with regard to Appellant's breach of contract claim.

■ ¶ 29 Appellant's second and third causes of action allege negligence on the part of Appellee for teaching an illegal and injurious style of softball pitching to Appellant and for removing Appellant from the Magic. To prevail on a negligence claim, a plaintiff must demonstrate the following: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff. *See Burman v. Golay & Co., Inc.*, 420 Pa.Super. 209, 616 A.2d 657 (1992).

¶ 30 Appellant argues that she provided eleven affidavits from softball coaches regarding Appellee's duty not to teach her an illegal and injurious style of pitching. Each affiant indicated that Appellee was aware that the pitching style he taught Appellant and the means by which he dis-

missed Appellant from the Magic were improper, yet he undertook each action without regard for the established softball association rules regarding pitching styles and dismissal of players. Therefore, viewing the evidence in a light most favorable to Appellant, we conclude that Appellee owed Appellant a duty not to teach her an illegal and injurious pitching style or dismiss her in the fashion that he did and that he breached said duties.

■ ¶ 31 Appellant contends that she has established the causal nexus between her injuries[6] and the breach of duty by Appellee *via* four expert reports produced in response to Appellee's and MAA's summary judgment motion.[7] The four expert reports in question were provided by Anna Tobia, Ph.D., Bill Redmer, Michael Sachs, Ph.D., and Edward J. Hartman, D.C. A review of the trial court's opinion indicates that it did not consider these expert reports in its grant of summary judgment.

¶ 32 Responses to motions for summary judgment are governed by Pa.R.Civ.P. 1035.3, which states, in pertinent part, the following:

(a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying:

\* \* \*

(2) evidence *in the record* establishing the facts essential to the cause of

---

6. Appellant alleges that she suffers from a permanent injury to her right shoulder and depressive episodes as a result of Appellee's negligence.

7. The record indicates that the expert reports were provided in Appellant's response to MAA's motion for summary judgment. Nevertheless, Appellant's responses to Appellee

and MAA's motions for summary judgment were filed on the same day, and Appellee replied to Appellant's submission of these expert reports on August 29, 2003, in a supplemental reply brief. Accordingly, the trial court could have considered the expert reports in its determination of Appellee's motion for summary judgment.

action or defense which the motion cites as not having been produced.

(b) An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence.

(emphasis added).

¶ 33 Rule 1035.1 defines "record" in the following fashion:

(1) pleadings,

(2) depositions, answers to interrogatories, admissions, and affidavits, and

(3) reports signed by an expert witness, that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories.

(emphasis added).

¶ 34 Rule 4003.5 controls the discovery of expert testimony, and states, in pertinent part, the following:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) a party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify[.]

* * *

(b) An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

¶ 35 A review of the record indicates that Appellee's first set of interrogatories requested Appellant to identify the expert witnesses she intended to call at trial. Appellant did not identify any expert witnesses or supplement her answer to include the names of any expert witnesses before Appellee filed his motion for summary judgment. Thus, it appears that the trial court refused to entertain the expert reports because they were presented in violation of Rule 4003.5. We disagree with the trial court's action, and conclude that Appellant was permitted to utilize these expert reports to supplement her response to the summary judgment motion. We draw support for this conclusion from our Supreme Court's holding in *Gerrow v. John Royle & Sons*, 572 Pa. 134, 813 A.2d 778 (2002) (plurality) and our subsequent holding in *Kurian v. Anisman*, 851 A.2d 152 (Pa.Super.2004).

¶ 36 In *Gerrow*, David Gerrow and his wife (the Gerrows) brought suit sounding in negligence against John Royale & Sons (JR & S) and Shincor Silicones, Inc. (Shincor), as a result of personal injuries suffered by Gerrow due to a malfunctioning device manufactured by JR & S and Shincor. *Id.*, at 136–37, 813 A.2d at 780. The case proceeded through pre-trial pleadings and, on July 24, 1997, the Honorable Joseph D. O'Keefe issued a case management order setting December 7, 1998, as the deadline for submission of the expert reports of the Gerrows. *Id.*, at 137, 813 A.2d at 780. Thereafter, on November 23, 1998, all parties joined in a motion to extend the discovery deadline, which the trial court denied. *Id.*, at 137, 813 A.2d at

780. Nevertheless, all parties continued to take discovery after the December 7th deadline.

¶ 37 The case management order also contained a January 4, 1999 deadline for the filing of all pre-trial motions. *Gerrow,* at 137, 813 A.2d at 780. Although amenable to continuing discovery past the December 7th deadline, Shincor filed a motion for summary judgment on December 31, 1998, to protect its position in the litigation. *Id.,* at 137, 813 A.2d at 780. The motion was based on the Gerrows' failure to submit expert reports within the time allotted by the case management order, without which the Gerrows could not establish a *prima facie* case due to the technical nature of their negligence claim. *Id.,* at 137, 813 A.2d at 780. The filing of the summary judgment motion was based on Shincor's concern that, if the trial court refused to accept late filings of expert reports, it would not accept late filings of pre-trial motions. *Id.,* at 137, 813 A.2d at 780. Therefore, to protect itself, Shincor concluded that the summary judgment motion had to be filed before the January 4th deadline, even though Shincor had no objection to the parties continuing discovery beyond the December 7th deadline. *Id.,* at 137, 813 A.2d at 780. Thereafter, the Gerrows filed a response to Shincor's summary judgment motion and, with it, filed several expert reports which were allegedly sufficient to set forth a claim of negligence. *Id.,* at 137, 813 A.2d at 780.

¶ 38 Disposition of Shincor's summary judgment motion was assigned to the Honorable Howland W. Abramson. *Gerrow,* at 138, 813 A.2d at 780. Judge Abramson concluded that the doctrine of coordinate jurisdiction precluded him from extending the December 7th discovery deadline date set by Judge O'Keefe and that the Gerrows' attachment of the expert reports with their response to Shincor's summary judgment motion was an impermissible attempt to circumvent the deadline. *Id.,* at 138, 813 A.2d at 780. Accordingly, Judge Abramson granted Shincor's summary judgment motion. *Id.,* at 138, 813 A.2d at 780.

¶ 39 The Gerrows appealed the judgment to this Court, and we reversed and held that the expert reports were a permissible supplementation of the record pursuant to Pa.R.Civ.P. 1035(b) and that the doctrine of coordinate jurisdiction, under the circumstances, would not have prevented Judge Abramson from revisiting the case management deadlines set forth by Judge O'Keefe. *Gerrow,* at 138, 813 A.2d at 780; *see also Gerrow v. Shincor Silicones, Inc.,* 756 A.2d 697 (Pa.Super.2000). Thereafter, Shincor sought and received *allocatur* to our Supreme Court on the following issues: (1) whether Pa.R.Civ.P. 1035(b) allows a party to supplement the record with additional evidence, rather than limiting such evidence merely to that intended to supplement evidence already of record; and (2) whether the coordinate jurisdiction rule precludes the trial court's consideration of an expert report, appended to the answer to a motion for summary judgment, that was not filed before the deadline for discovery set by a different judge in the case management order. *Gerrow,* at 138, 813 A.2d at 781.

¶ 40 On review, a divided Supreme Court affirmed the decision of this Court. Writing for the plurality, Mr. Chief Justice Zappala (now Chief Justice Emeritus), held the following:

Rule 1035.3 (response to motion for summary judgment) states: "(b) An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa.R.C[iv].P.

1035.3(b). Both the timing and the scope of the supplementation are at issue. The Superior Court interpreted the rule broadly. We hold that the rule, read *in pari materia* with Rule 1035.2 (motion for summary judgment) and the Note and Explanatory Comment, does permit the supplementation which was attempted by [Shincor].

Rule 1035.2 reads:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law:

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

(emphasis added). The Explanatory Comment—1996 includes the following guidance for applying the Rule:

Special note should be taken of the requirement under Rule 1035.2(2) that the motion be made after completion of discovery relevant to the motion, including the production of expert reports. While Rule 1035.2(2) is prefaced with the statement that any par-

ty may file a motion after the relevant pleadings have closed, the adverse party must be given adequate time to develop the case and the motion will be premature if filed before the adverse party has completed discovery relevant to the motion. The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed.

The timing of the motion is important [. . .] Under Rule 1035.2(2), the motion is brought "after the completion of discovery relevant to the motion."

New Rule 1035.2 provides that a party may move for summary judgment after the "relevant" pleadings are closed and, in order to provide discretion in the lower court, within such time so as not to "unreasonably" delay the trial (emphasis added).

Since the intent of the motion for summary judgment is not to eliminate meritorious claims that could be established by additional discovery or expert report, it is consistent with that intent to permit supplementation of the record under Rule 1035.3(b) to allow the record to be enlarged by the addition of such expert reports. We regard this as being squarely within the scope of the supplementation permitted by Rule 1035.3(b) in response to a motion for summary judgment.

*Gerrow*, at 138–40, 813 A.2d at 781–82.[8]

■ ¶ 41 We adopted the holding of *Gerrow* in *Kurian* and distinguished *Ger-*

---

8. Thereafter, our Supreme Court concluded that Judge Abramson was not prevented from revisiting Judge O'Keefe's decision because Judge O'Keefe's decision to deny the parties'

November 23, 1998 motion both appeared to be erroneous and because the subsequent summary judgment motion was different in kind than the November 23, 1998 motion to

**1130** ■

*row* from the situation in which an expert is not identified during the discovery process and the expert's report is utilized as a response to a summary judgment motion. *Kurian*, 851 A.2d at 161–62. In *Kurian*, we held that, although a plaintiff may supplement the record with an expert report not provided during discovery in response to a summary judgment motion, a trial court may, pursuant to Rule 4003.5(b), refuse to entertain an expert report from an unidentified expert provided in response to a summary judgment motion upon a showing of **prejudice**. *Id.*, 851 A.2d at 162 (emphasis added). In the present case, although we have concluded that discovery was complete and Appellee was not amenable to further discovery, the trial court did not discuss in its opinion whether Appellee would be prejudiced by the admission of the four expert reports in question. As we held in *Kurian*, prejudice may not be presumed in order to permit the drastic sanction of exclusion of an expert witness's report. *Id.*, 851 A.2d at 162. Accordingly, as the trial court made no independent determination of whether the expert reports would prejudice Appellee, the proper course for the trial court was to permit the record to be supplemented with the expert reports in question and to consider them in the disposition of Appellee's summary judgment motion. *See Kurian*, 851 A.2d at 162; *see also Gerrow*, at 138–40, 813 A.2d at 781–82; *contrast Wolloch v. Aiken*, 572 Pa. 335, 341–42, 815 A.2d 594, 597–98 (2002) (where discovery complete and summary judgment entered, plaintiff could not supplement record with expert reports produced in untimely response to sum-

mary judgment motion filed *after* entry of summary judgment; summary judgment affirmed). Therefore, we are constrained to conclude that the trial court abused its discretion by granting summary judgment in Appellee's favor as to Appellant's negligence claim without considering the expert reports.

■ ¶ 42 Appellee argues that the four expert reports in question were not based on facts, testimony, or empirical data and, therefore, should have been disregarded by the trial court. We disagree. Reference to each expert report indicates that the expert based his or her opinion from affidavits provided to them by Appellant or through personal observation of Appellant. Therefore, the experts' reports were based on facts or personal observation and, therefore, were not merely subjective opinions. *Contrast Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 808 A.2d 178, 183 (Pa.Super.2002) (expert reports without reference to facts in record do not give rise to a genuine issue of material fact).

■ ¶ 43 Alternatively, the trial court concluded that Appellee was shielded from liability for his negligence by 42 Pa.C.S.A. § 8332.1 (relating to negligence standard for volunteer managers, coaches, umpires, referees, or non-profit organizations). Title 42 Pa.C.S.A. § 8332.1 states, in pertinent part, the following:

(a) GENERAL RULE.—Except as provided otherwise in this section, no person who, without compensation and as a volunteer, renders services as a manager, coach, instructor, umpire or referee or who, without compensation and as a

---

extend the discovery deadline. *See Gerrow*, at 141–42, 813 A.2d at 782–83. As such, the doctrine of coordinate jurisdiction did not apply. *See, e.g., Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995) (coordinate jurisdiction rule does not apply where prior holding was clearly erroneous and would cre-

ate manifest injustice if followed); *see also Riccio v. American Republic Ins., Co.*, 550 Pa. 254, 705 A.2d 422 (1997) (coordinate jurisdiction rule does not apply when two motions present distinct procedural postures; then substituted judge may revisit provisional rulings made earlier in litigation).

volunteer, assists a manager, coach, instructor, umpire or referee in a sports program of a nonprofit association, and no nonprofit association, or any officer or employee thereof, conducting or sponsoring a sports program, shall be liable to any person for any civil damages as a result of any acts or omissions in rendering such services or in conducting or sponsoring such sports program, unless the conduct of such person or nonprofit association falls substantially below the standards generally practiced and accepted in like circumstances by similar persons or similar nonprofit associations rendering such services or conducting or sponsoring such sports programs, and unless it is shown that such person or nonprofit association did an act or omitted the doing of an act which such person or nonprofit association was under a recognized duty to another to do, knowing or having reason to know that such act or omission created a substantial risk of actual harm to the person or property of another. It shall be insufficient to impose liability to establish only that the conduct of such person or nonprofit association fell below ordinary standards of care.

¶ 44 Therefore, by its terms, the statute applies only to volunteer coaches. Reference to Appellant's complaint indicates that part of Appellee's coaching assistance to Appellant was *for profit,* and, therefore, the statute would not apply in that circumstance. Moreover, reference to the eleven affidavits and four expert reports provided by Appellant in her response to Appellee's summary judgment motion each allege that Appellee's activities were substantially below that of accepted coaching practices and caused a substantial risk of harm to Appellant. As such, Appellant has presented a substantial question of material fact regarding the applicability of 42 Pa. C.S.A. § 8332.1, and, therefore, the trial court's grant of summary judgment in favor of Appellee regarding this issue was improper. *Downey,* 817 A.2d at 524.

¶ 45 Therefore, we conclude that the trial court abused its discretion by entering summary judgment in Appellee's favor with regard to Appellant's negligence claim. As such, we reverse the trial court's grant of summary judgment as to that issue and remand for further proceedings consistent with this Opinion. We affirm the trial court's grant of summary judgment as to Appellant's remaining claims, and we affirm the trial court's striking of count III from Appellant's complaint.

¶ 46 Judgment reversed in part. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.