Clyde Crady SWISHER, III, Appellant,

v.

Marylynne PITZ, and Andrea
Veletri, Ph.D., Appellee.

Superior Court of Pennsylvania.

Submitted Nov. 8, 2004.
Filed Feb. 11, 2005.

Clyde C. Swisher, Appellant, Pro Se.

John E. Quinn, Pittsburgh, for Pitz.

Daniel P. Carroll, Jr., Pittsburgh, for Veletri.

Racheael L. Baturin, Harrisburg, for Pennsylvania Psychological, Amicus Curiae.

BEFORE: ORIE MELVIN, BENDER and POPOVICH, JJ.

OPINION BY BENDER, J.:

¶ 1 Clyde Crady Swisher, III (Swisher), appeals from the December 1, 2003 order sustaining the preliminary objections filed by Andrea Veletri, Ph.D. (Dr. Veletri), a psychologist who treated Swisher's ex-wife, Marylynne Pitz (Pitz). Along with sustaining Dr. Veletri's preliminary objections, the court determined that Swisher's complaint against Dr. Veletri, in which Swisher claimed intentional infliction of severe emotional distress and professional negligence, failed to state a claim upon which relief could be granted. Thus, the trial court's order dismissed Swisher's complaint against Dr. Veletri with prejudice. Swisher's appeal to our Court raises the issue of whether a psychologist has a duty to warn a third party when her patient could not commit to a marriage with the third party. We refuse to expand a psychologist's duty to warn third parties to this extent and, accordingly, we affirm the trial court's order dismissing Swisher's complaint against Dr. Veletri.

¶ 2 Swisher initiated the instant action against Dr. Veletri and Pitz by filing a praecipe for writ of summons on May 31, 2002. Swisher filed a complaint on October 15, 2002. Pitz and Dr. Veletri, represented by different attorneys, both filed separate preliminary objections on November 4, 2002. Swisher filed an amended complaint on November 26, 2002. The trial court provides a concise explanation of Swisher's claims against Veletri as follows:

> The essence of Swisher's claim against Veletri is that Veletri treated Swisher's ex-wife Pitz both before and during their marriage; that Veletri knew that Pitz was unable to keep the marriage commitment, but nevertheless continued to encourage the relationship; that after Pitz filed for divorce, Veletri encouraged and supported Pitz in her decision to seek counseling with Swisher in pursuit of a reconciliation, even though Veletri knew counseling would not be successful. Swisher contends that based on the above allegations Veletri had a duty to warn him that Pitz was unable to make a sound commitment to the marriage, that his impending nuptials had no possibility of longevity; and that he would therefore sustain emotional injury from the dissolution of the relationship.

Trial Court Opinion (T.C.O.), 6/29/04, at 2.[1]

¶ 3 Against Dr. Veletri, Swisher set forth one count of "intentional infliction of severe emotional distress" and one count of professional negligence. Dr. Veletri filed preliminary objections on December 10, 2002. By order dated July 2, 2003, the trial court sustained Dr. Veletri's preliminary objections and dismissed with prejudice all of the counts against her in Swisher's complaint. The court ordered

---

1. Swisher states that he has settled his claims with Pitz. See Swisher's brief at 9. See also T.C.O. at 2 ("Swisher...asserts that he and Pitz have reached a settlement and he is only pursuing an appeal against Veletri"). Pitz has not submitted a brief in this appeal, although her name remains in the caption.

Swisher to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Swisher complied. Initially, our Court filed an order dismissing the appeal as it was taken from an interlocutory order sustaining preliminary objections. Thereafter, following Dr. Veletri's filing of a praecipe for entry of judgment, the court entered judgment on December 1, 2003, in favor of Dr. Veletri. Swisher's timely appeal follows.

¶ 4 Swisher raises the following issues, as set forth in the "Statement of Questions Involved" portion of his brief:

1. Did the Court of Common Pleas commit reversible error by holding that Dr. Velletri's [sic] use of [Swisher] as an unwitting therapeutic device and test of her therapy on Ms. Pitz, as more fully alleged in the Amended Complaint, was insufficiently outrageous, as a matter of law to satisfy the requirements of the tort of intentional infliction of severe emotional distress?

2. Did the Court of Common Pleas commit reversible error by holding that Dr. Velletri [sic], as a matter of law, had no duty to warn [Swisher] of the specific threat to him by her patient, Ms. Pitz, under the circumstances set forth in the Amended Complaint?

Swisher's brief at 6.

¶ 5 We first note as follows:

When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Reeves v. Middletown Athletic Ass'n,* 2004 PA Super 475, 16, 866 A.2d 1115 (Pa.Super.2004).

¶ 6 In his first issue, Appellant argues that Dr. Veletri's conduct was "outrageous" such that his claim for intentional infliction of emotional stress should survive preliminary objections. We disagree.

¶ 7 In *Reeves,* we examined the tort of intentional infliction of emotional distress and stated:

There remains some question as to whether the courts of this Commonwealth recognize a cause of action for intentional infliction of emotional distress. *See, e.g., Hoy v. Angelone,* 554 Pa. 134, 150–51 n. 10, 720 A.2d 745, 753–54 n. 10 (1998). However, our Supreme Court has indicated that in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. *Id.,* at 151, 720 A.2d at 754. In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct. *Fewell v. Besner,* 444 Pa.Super. 559, 664 A.2d 577, 582 (Pa.Super.1995).

*Reeves,* 2004 PA Super 475, 16, 866 A.2d at 1122 (footnote omitted).

¶ 8 " 'Outrageous or extreme conduct' " has been defined by the appellate courts of this Commonwealth as conduct that is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.' " *Id.* at 16, n. 5, 866 A.2d at 1122,

n. 5 (quoting *Hoy*, 720 A.2d at 754). "[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*, 720 A.2d at 754 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)).[2] In *Hoy*, we examined examples of cases in which we found outrageous conduct for purposes of a claim of intentional infliction of emotional distress. We stated:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. *See e.g., Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Hoy*, 720 A.2d at 754.

¶ 9 "With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson v. Caparelli*, 425 Pa.Super. 404, 625 A.2d 668, 671 (1993). In the instant case, the trial court concluded: "Veletri's alleged acts ... do not rise to the level of extreme or outrageous conduct. Swisher alleges that Veletri, his ex-wife's therapist, encouraged Pitz's decision to engage in a relationship with Swisher and to marry him, and thereafter supported Pitz's decision to engage in counseling when the marriage encountered difficulties, all the while knowing that Pitz would be unable to make and keep a marital commitment." T.C.O. at 4. We agree with the trial court that these alleged actions were not outrageous for purposes of the tort of intentional infliction of emotional distress. Accordingly, the trial court did not err by determining that Swisher did not state a cause of action, as a matter of law, against Dr. Veletri for intentional infliction of emotional distress.

¶ 10 In his second issue, wherein Swisher challenges the dismissal of his professional malpractice claim against Dr. Veletri, Swisher argues that Dr. Veletri had a duty to warn him, a non-patient third party, that Pitz would not be able to keep the marriage commitment. Swisher's argument is meritless.

¶ 11 In *Emerich v. Philadelphia Ctr. for Human Dev.*, 554 Pa. 209, 720 A.2d 1032, 1035 (1998), our Supreme Court, as an issue of first impression, addressed the issue of whether "a mental health care professional owes a duty to warn a third party of a patient's threat of harm to that third party and, if so, the scope of such a duty." Our Supreme Court held that "a

**2.** Section 46 of the Restatement (Second) of Torts (entitled "Outrageous Conduct Causing Severe Emotional Distress") outlines the tort of intentional infliction of emotional distress. Although section 46 has not been expressly adopted in Pennsylvania, *see Hoy*, 720 A.2d at 753 n. 10, it still has provided guidance to our courts when presented with a claim of intentional infliction of emotional distress by outrageous conduct.

mental health professional who determines, or under the standards of the mental health profession, should have determined, that his patient presents a serious danger of violence to another, bears a duty to exercise reasonable care to protect by warning the intended victim against such danger." *Id.* at 1040. The Court went on to determine under what circumstances a "mental health professional has a duty to protect by warning a third party of potential harm." *Id.* The Court emphasized that such circumstances are "extremely limited." *Id.* The Court concluded that a duty to warn in this context exists "only where a specific and immediate threat of serious bodily injury has been conveyed by the patient to the professional regarding a specifically identified or readily identifiable victim." *Id.* at 1041.

¶ 12 As the trial court in the instant case recognized, Dr. Veletri did not owe a duty to Swisher. *See* T.C.O. at 3. Swisher's allegations simply do not meet the test enunciated in *Emerich* whereby the duty to warn a third party arises only when the patient communicates a specific and immediate threat of serious bodily injury against a specifically identified or readily identifiable third party victim. Obviously, the threat of serious bodily injury is missing in this case; Swisher's alleged mental injury and hurt from dissolution of his marriage does not result in any duty to warn owed to him by Dr. Veletri.

¶ 13 For the foregoing reasons, we affirm the order dismissing Swisher's claims against Dr. Veletri and entering judgment in Dr. Veletri's favor.

¶ 14 Order affirmed.

¶ 15 Judge ORIE MELVIN concurs in the result.