DLD-017                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1680
_____

VINCENT WESLEY HALLMAN

v.


DEPARTMENT OF HUMAN SERVICES, Et Al; EDVAL
HUNTER, (D.H.S. Social Worker); FELIPE DURAND,
(Medical Social Worker); NICOLETTE BURGESS-BOLDEN,
(Child Welfare Unit); VAL JONES, (Child Advocate);
DELTA COMMUNITY SUPPORTS; KATRINA SHELTON,
(Agency Worker); KEVIN RYAN, (Agency Supervisor)

Vincent Wesley Hallman,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-11-cv-06744)
District Judge: Paul S. Diamond
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 16, 2015

Before:  CHAGARES, GREENAWAY, JR. and SLOVITER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 9, 2015)
_____

OPINION*
_____


* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Appellant Vincent Wesley Hallman appeals from an order of the District Court awarding summary judgment to the defendants. For the reasons that follow, we will summarily affirm.

Hallman's son, D.H., was born on February 9, 2006. On March 13, 2006, just over a month later, Hallman brought D.H. to Temple Children's Hospital for respiratory problems. Hospital personnel notified the Philadelphia Department of Human Services ("DHS") that D.H. was in the hospital.[1] A restraining order was issued against Hallman for parental neglect, D.H. was temporarily committed to the custody of DHS, and a hearing was scheduled for March 17, 2006. Hallman was represented by counsel at this hearing. DHS was awarded temporary custody but the restraining order was lifted. On March 29, 2006, D.H. was adjudicated dependent and committed to the custody of DHS. On April 26, 2006, D.H. was placed with Delta Community Supports, Inc., a non-profit that contracts with DHS to assist in providing foster care.

Thereafter, numerous hearings were held with the goal of reunification. Hallman was represented throughout by counsel. A Family Service Plan required Hallman to, for example, attend parenting classes, obtain and maintain appropriate housing, and maintain a relationship with D.H. through regular visitation. Meanwhile, Hallman was incarcerated in November, 2006, which made it more difficult for him to comply with the

---

[1] D.H. and his mother had tested positive for cocaine when D.H. was born. The agency previously had initiated proceedings to terminate D.H.'s mother's parental rights as to another of her children.

Family Service Plan.[2]  On August 13, 2008, Court of Common Pleas Judge Daniel J. Anders found by clear and convincing evidence, as required by 23 Pa. Cons. Stat. Ann. § 2511, that it was in D.H.'s best interest to be adopted.  Judge Anders involuntarily terminated the parental rights of both Hallman and D.H.'s mother, and transferred the case to the adoption unit.  Hallman appealed, but the Pennsylvania Superior Court affirmed the trial court's decision.  D.H. eventually was adopted by his foster parents.

Having lost his parental rights in state court, Hallman, on October 28, 2011, filed a civil action pro se in the United States District Court for the Eastern District of Pennsylvania against DHS, Edval Hunter, Felipe Durand, Nicolette Burgess-Bolden, Valerie Jones, Delta Community Supports, Katrina Shelton, and Keven Ryan, seeking rescission of the restraining order and the order terminating his parental rights.  Hallman also sought damages under 42 U.S.C. § 1983 for procedural due process violations; under 42 U.S.C. § 1985(3) for a civil rights conspiracy; and under state law for intentional infliction of emotional distress.

Early in the litigation, the defendants moved to dismiss Hallman's amended complaint.  The District Court in response dismissed Hallman's demand for injunctive relief for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine.  The Court reasoned that subject matter jurisdiction is lacking in the federal district courts to the extent that Hallman sought review of the state court restraining and involuntary termination of parental rights orders.  See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010) (*Rooker-Feldman* doctrine bars suits

---

[2] Hallman is serving a sentence of 10-20 years' imprisonment.

in district court that are essentially appeals from state court judgments). The Court dismissed Valerie Jones, D.H.'s child advocate, from the civil action on the basis of an absolute immunity from suit, cf. Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 488-89 (3d Cir. 1997) ("[C]hild welfare workers and attorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings."). The Court also dismissed Hallman's § 1985(3) conspiracy claim for failure to state a plausible claim for relief, see Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

Thereafter, discovery ensued and Hallman was deposed. At the close of discovery, the remaining defendants moved for summary judgment, Fed. R. Civ. P. 56(a), in two groups, the "Delta" group which included its employees Shelton and Ryan, and the DHS group which included Hunter and City Solicitor Burgess-Bolden. The motions were supported by numerous exhibits, including the transcript from Hallman's deposition taken by video conference on September 22, 2014; D.H.'s mother's treatment records; the request for the restraining order made by defendant Hunter and the restraining order itself; the March 17 and March 29, 2006 Orders; D.H.'s hospital records; various other state court orders leading up to and following the August 13, 2008 Order and Decree terminating Hallman's parental rights and the Order itself; Judge Anders' December 17, 2008 Opinion in In re: D.H., 2590 EDA 2008, explaining his decision to terminate Hallman's parental rights; state court hearing transcripts; and the Pennsylvania Superior Court's May 18, 2009 decision in In re: D.H., 2590 EDA 2008, affirming Judge Anders.

4

In response, Hallman filed a motion for appointment of counsel, contending that he lacked the legal ability to oppose the summary judgment motions. In an order entered on March 2, 2015, the District Court awarded summary judgment to defendants Delta Community Supports, Shelton, Ryan, DHS, Hunter, and Burgess-Bolden. The Court also dismissed Felipe Durand pursuant to Rule 4(m), Fed. R. Civ. P., for failure of service.[3] Judgment was entered on that same day.

Hallman appeals. We have jurisdiction under 28 U.S.C. § 1291. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, but he has not done so.

We will summarily affirm the order of the District Court because no substantial question is presented by this appeal, Third Circuit LAR 27.4 and I.O.P. 10.6. The District Court properly applied *Rooker-Feldman* to Hallman's claims for injunctive relief, properly dismissed the amended complaint as to the child advocate, Valerie Jones, and properly dismissed the § 1985(3) conspiracy claim, because, even if Hallman is a member of a protected class, he did not allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

_____

[3] We summarily affirm the dismissal of Durand for failure to make service. The summary judgment record shows that Durand is a Temple University Hospital social worker. Contrary to Hallman's assertion, see Docket Entry No. 10, Durand was not properly served at DHS's headquarters on 1515 Arch Street in Philadelphia. See Fed. R. Civ. P. 4(e).

5

action," as required by § 1985(3).  See Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

In awarding summary judgment to the remaining defendants on Hallman's procedural due process claim, the District Court noted that the summary judgment record showed that, despite his incarceration, Hallman attended and/or was represented by counsel at all of the hearings, and he was permitted to testify by telephone and explain why his incarceration was making compliance with the Family Service Plan difficult. The District Court noted the state court's determination that Hallman's efforts were insufficient because he attended only two parenting classes before he was incarcerated, failed to enroll in parenting classes at the prison, offered no proof that the prison parenting classes were full as he claimed, failed to inquire about visitation with D.H. at the prison, and also was expected to remain incarcerated for many years and thus lacked the capacity to care for D.H.  Ultimately, the District Court determined that Hallman testified at one hearing, attended two, and was represented by counsel at all three, and thus he received adequate process.

We review a District Court's grant of summary judgment *de novo*.  Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To prevail on his claim of procedural due process, Hallman had to show that the procedures that were available to him to protect his parental rights did not provide him due process of law.  See Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006).  "The fundamental requirement

6

of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

Considering the Mathews factors, that is, Hallman's interest in retaining his parental rights and the risk of an erroneous deprivation of that interest through the procedures used; and the rights available to Hallman under § 2511, it is evident that Hallman received sufficient procedural due process. The summary judgment record establishes that he was represented by counsel throughout, had a meaningful opportunity to be heard, and received a reasoned explanation for the decision. His assertion of a "cover-up" by DHS and the Delta defendants finds no factual support in the summary judgment record, and his assertion that Ms. Shelton testified falsely at the termination hearing is contradicted by his own testimony that he did not fully comply with the Family Service Plan. We note, moreover, that Hallman did not allege that DHS failed to demonstrate that his parental rights should be terminated by the required clear and convincing evidence. See Santosky v. Kramer, 455 U.S. 745, 768-69 (1982) (holding that due process requires at least clear and convincing evidence before state may terminate parental rights).[4]

Next, under Pennsylvania law, a plaintiff must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress" in order to state a claim for intentional infliction of emotional distress. Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004). This has been

---

[4] To the extent that Hallman also alleged an abuse of process claim, we agree with the District Court's analysis and determination that the defendants did not act with an unlawful purpose in initiating the custody and involuntary termination proceedings.

defined as conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Id. at 1122 n.5 (quoting Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)). In addition to alleging outrageous conduct, the plaintiff must also suffer physical injury. Reeves, 866 A.2d at 1122-1123 ("[A] plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct."). No rational trier of fact could conclude, based on the undisputed facts here, that the defendants are liable for the Pennsylvania tort of intentional infliction of emotional distress, and summary judgment was therefore appropriate on this claim.

Regarding Hallman's claimed inability to oppose the motions for summary judgment due to a lack of counsel, we note that, early in the litigation and upon his request, the District Court referred his case to the Pro Se Prisoner Panel to secure counsel. When counsel could not be obtained (after some sixteen months), the Court granted Hallman's request to proceed pro se. Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving parties have carried their burden, as the defendants did here, the nonmovant must then come forward with evidence showing that there is a triable issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Hallman failed in this regard, but not because he lacked counsel. Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

8

genuine issue for trial." Id. at 587. Because there was no genuine issue for trial here, appointment of counsel would not have altered the outcome of this case.

For the foregoing reasons, we will summarily affirm the order of the District Court granting summary judgment to the defendant