J-A05024-12

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID BRUNO AND ANGELA BRUNO, HUSBAND AND WIFE, AND ANTHONY GOTTI BRUNO AND MCKAYLA MARIE BLAKE, BY THEIR PARENTS AND LEGAL GUARDIANS, DAVID BRUNO AND ANGELA BRUNO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ERIE INSURANCE COMPANY, RUDICK FORENSIC ENGINEERING, INC., AND THERESA PITCHER AND MARC PITCHER, | |
| Appellees | No. 1154 WDA 2011 |

Appeal from the Order Entered June 27, 2011
In the Court of Common Pleas of McKean County
Civil Division at No(s): 1369 of 2009.

BEFORE:  BOWES, OLSON, and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 22, 2015**

Appellants, David Bruno and Angela Bruno (husband and wife) and Anthony Gotti Bruno and McKayla Marie Blake, by their parents and legal guardians, David Bruno and Angela Bruno, appeal from the trial court's order entered June 27, 2011, wherein the trial court amended its order entered May 25, 2011, and made an "express determination that an immediate appeal [of the May 25, 2011 order] would facilitate resolution of the entire

---

*Retired Senior Judge assigned to the Superior Court.

J-A05024-12

case."[1]   *See* Pa.R.A.P. 341(c).   The case returns to this Court following remand from the Pennsylvania Supreme Court.  We vacate the trial court's order and remand.

On August 30, 2010, Appellants filed a twelve-count complaint against Erie Insurance Company ("Erie Insurance"), Rudick Forensic Engineering, Inc. ("Rudick Engineering"), Theresa Pitcher, and Marc Pitcher.[2]  According to the complaint, in September 2007, David Bruno negotiated the purchase of the Pitchers' Bradford, Pennsylvania house.  Appellants' Complaint, 8/30/10, at ¶ 6.  Prior to the sale of the house, the Pitchers executed a "Seller's Property Disclosure Form" and delivered the form to Appellants. The form, which is required by Pennsylvania's Real Estate Seller Disclosure Law, 68 Pa.C.S.A. § 7301, *et seq.*, obligated the Pitchers to "disclose to the buyer [of the real estate] any material defects with the property known to the seller."  68 Pa.C.S.A. §§ 7303 and 7304.  Yet, as Appellants aver, the Pitchers' "disclosure[ form] failed to inform [Appellants] that [the Pitchers] were aware of the presence of water leakage and of mold of a type and in a

_____

[1] The trial court's May 25, 2011 order:  1) sustained the preliminary objections of Erie Insurance Company; and 2) sustained in part and overruled in part the preliminary objections of Rudick Forensic Engineering, Inc.

[2] Appellants instituted the current lawsuit on September 28, 2009, by filing a *praecipe* for a writ of summons.

- 2 -

quantity that it posed a health hazard to residents of the home." Appellants' Complaint, 8/30/10, at ¶ 4.

Unaware of the water or mold, Appellants purchased the Pitchers' house on September 28, 2007. *Id.* at ¶¶ 9 and 13. Further, in connection with the ownership of the property, David Bruno purchased a Homeowner's Insurance Policy from Erie Insurance. *Id.* at ¶ 11. The policy insured each of the Appellants. *Id.* at ¶ 15.

As Appellants aver, on October 5, 2007, David Bruno and a contractor were remodeling the basement of the house when they discovered "two damp areas with black mold behind the paneling . . . , which appeared to be in the vicinity of leaky pipes located behind the walls." *Id.* at ¶ 12. David Bruno immediately contacted Erie Insurance, notified the company of the damage, and informed Erie Insurance "that he wished to initiate a claim under his [Homeowner's Insurance P]olicy for the damage to his home caused by the leakage of water and the mold." *Id.* at ¶ 14.

On October 9, 2007, Scott Steffey (an adjuster for Erie Insurance) and Jerome D. Paulick, P.E. (an engineer for Rudick Engineering) arrived at Appellants' home to inspect the damage. *Id.* at ¶ 16. Appellants aver:

> Mr. Steffey was asked . . . if he would authorize payment of the policy limit for mold of [$5,000.00], so that [Appellants] could have the mold tested. Both Mr. Steffey and [Mr. Paulick] told [David] Bruno and [David Bruno's] contractor that the mold was harmless and that they should continue tearing out the existing paneling. [Messrs. Steffey and Paulick] stated that health problems associated with mold were a media frenzy and overblown. Mr. Steffey stated that

> he could not authorize payment, as no determination had yet been made that coverage was available.

*Id.* at ¶¶ 18-20 (internal paragraphing omitted).

According to Appellants' complaint, "[b]ased on the assurances that [Appellants] received from Rudick [Engineering] and Scott Steffey that the mold did not pose a health hazard, [David] Bruno and his contractor proceeded to remove additional paneling from the basement and attempted to eradicate the mold they found there themselves." *Id.* at ¶ 21. During the course of this remodeling, Appellants continued to live in the house. *Id.*

As the remodeling progressed, David Bruno and his contractor discovered additional plumbing leaks and other areas of black mold. *Id.* at ¶ 22. Appellants notified Erie Insurance of these additional findings and Erie Insurance again sent Mr. Paulick, from Rudick Engineering, to inspect the damage. *Id.* at ¶ 23. During this second inspection, "[n]either Erie [Insurance] nor its consultant, Rudick [Engineering], told [Appellants] of the dangers to their physical health by exposure to the mold in their home, nor the necessity of quick professional action to remediate, encapsulate and/or remove the mold before it spread." *Id.* at ¶ 24.

> According to Appellants:

> As October [2007] progressed, [Appellants] began to experience health problems, beginning with respiratory problems that appeared to be sinusitis or allergies and headaches. [Appellants] did not at that time associate these health problems with the presence of mold in their house.

- 4 -

> In January [2008], Angela Bruno became seriously ill experiencing severe coughing, difficulties clearing her throat and breathing, and severe headaches.  In an attempt to determine the cause, [Appellants] decided to have the mold in their basement tested, on their own, at their own expense.  The testing revealed the presence of toxic mold in their basement, which posed a health hazard.

*Id.* at ¶¶ 26-29 (internal paragraphing omitted).

Following the test, Appellants contacted Erie Insurance and "asked Erie to pay the [$5,000.00] coverage available under [the] policy for mold eradication as well as other coverage available for the repair of water damage."  *Id.* at ¶ 30.  Erie Insurance informed Appellants that the matter was still under investigation and that a claim decision had not yet been made.  *Id.*

On April 23, 2008, Erie Insurance rendered payment on the claim.  *Id.* at ¶ 32.  Yet, as Appellants contend, "[b]y that point, the problems with mold in [Appellants'] home had become much more serious."  *Id.* at ¶ 33.  Indeed, Appellants allege that, as a direct and proximate result of the acts and omissions of the defendants:  "Angela Bruno has been diagnosed with cancer of the esophagus and voice box[,] which her doctors believe was caused by exposure to the mold in the home;" Appellants were required to move out of their home; and, because Appellants' home could not be eradicated of mold, Appellants were forced to demolish the house.  *Id.* at ¶¶ 33-36.

Based upon the above averments, Appellants levied twelve claims against the defendants. Counts one through four were filed against Theresa and Marc Pitcher and are not relevant to the current appeal. The remaining counts are as follows:[3] Count 5 (bad faith against Erie Insurance); Count 6 (breach of covenant of good faith and fair dealing against Erie Insurance, asserted solely by David Bruno); Count 7 (negligence against Erie Insurance, asserted by Angela Bruno and David Bruno); Count 8 (breach of contract against Rudick Engineering); Count 9 (negligence against Rudick Engineering); Count 10 (professional liability against Rudick Engineering); Count 11 (negligent misrepresentation against Rudick Engineering); and, Count 12 (misrepresentation/fraud against Rudick Engineering). Each tort claim listed above demanded the award of punitive damages. Moreover, Appellants did not file a certificate of merit with their complaint.

With respect to Erie Insurance, only Count 7 – the negligence claim – is relevant to the current appeal. As to this claim, Appellants alleged that Erie Insurance was negligent in: misleading Appellants about the nature of the mold problem; failing to "recognize the nature and severity of the mold problem;" failing to warn Appellants of the mold problem; failing to select and train its agents and employees; failing to properly inspect the premises; failing to properly analyze the test results; delaying the reporting of the test

---

[3] Unless otherwise indicated, the claims were asserted by all Appellants.

results; and, minimizing the dangers and consequences of the mold infestation. *Id.* at ¶ 91(a)-(v).

On December 3, 2010, Erie Insurance filed preliminary objections to Appellants' complaint and challenged the complaint on three grounds. First, Erie Insurance claimed that, since Pennsylvania law "does not recognize an independent cause of action for breach of the contractual duty of good faith and fair dealing," Count 6 of Appellants' complaint must be dismissed with prejudice. Erie Insurance's Preliminary Objections, 12/3/10, at 3; Pa.R.C.P. 1028(a)(4). Second, Erie Insurance contended that Appellants' negligence claim must be dismissed with prejudice, as it was barred by the gist of the action doctrine. Erie Insurance's Preliminary Objections, 12/3/10, at 4; Pa.R.C.P. 1028(a)(4). Finally, Erie Insurance filed a preliminary objection in the nature of a motion to strike Appellants' demand for a jury trial, as pleaded within Count 5 (bad faith) of Appellants' complaint. Erie Insurance's Preliminary Objections, 12/3/10, at 6-7; Pa.R.C.P. 1028(a)(2).

Rudick Engineering filed a companion set of preliminary objections and, within this pleading, also raised three grounds for relief. First, Rudick Engineering filed a preliminary objection in the nature of a motion to strike Appellants' demands for punitive damages. Rudick Engineering's Amended Preliminary Objections, 2/10/11, at 1; Pa.R.C.P. 1028(a)(2). According to Rudick Engineering, "[even i]f proven, the allegations in [Appellants'] complaint describe nothing more than negligence" and, thus, the allegations

could not support the award of punitive damages. Rudick Engineering's Brief in Support of Amended Preliminary Objections, 2/10/11, at 4. Rudick Engineering's second preliminary objection was in the nature of a demurrer and claimed that Appellants' breach of contract claim (Count 8) must be dismissed, as there was no contract between Appellants and Rudick Engineering. Rudick Engineering's Amended Preliminary Objections, 2/10/11, at 1; Pa.R.C.P. 1028(a)(4). Finally, Rudick Engineering filed a preliminary objection in the nature of a motion to strike the entirety of Appellants' professional liability claim (Count 10). Rudick Engineering's Amended Preliminary Objections, 2/10/11, at 1; Pa.R.C.P. 1028(a)(2). Rudick Engineering noted that Appellants failed to attach a certificate of merit to their complaint. According to Rudick Engineering, this failure violated Pennsylvania Rule of Civil Procedure 1042.3 and required that the professional liability claim be stricken. Rudick Engineering's Amended Preliminary Objections, 2/10/11, at 1-2.

Appellants responded to the preliminary objections and also filed a "Motion to Extend Time for Filing Certificate of Merit." Within the latter filing, Appellants contended that a certificate of merit was unnecessary in their case. However, Appellants declared that – if the trial court were to determine that a certificate of merit was necessary – Appellants requested the trial court to grant them a 60-day extension for filing the certificate of merit. Motion to Extend Time for Filing Certificate of Merit, 1/27/11, at 1-3.

Following a consolidated oral argument, the trial court ruled upon both sets of preliminary objections in an opinion and order entered May 25, 2011.[4] With respect to Erie Insurance's preliminary objections, the trial court sustained the preliminary objections in total. Thus, the trial court dismissed Count 6 (breach of covenant of good faith and fair dealing) and Count 7 (negligence) of Appellants' complaint with prejudice. Moreover, with respect to Count 5 (bad faith), the trial court ordered that Appellants' demand for a jury trial be stricken.[5] Trial Court Order, 5/25/11, at 1. Within this same May 25, 2011 order, the trial court sustained in part and overruled in part Rudick Engineering's preliminary objections. Specifically, the trial court: sustained the objection to strike the demands for punitive damages against Rudick Engineering; sustained the objection to strike Count 10 (noting that Appellants' professional liability claim was dismissed with prejudice); and, overruled the demurrer to the breach of contract claim. *Id.*

_____

[4] The trial court's opinion and order was time-stamped by the McKean County Prothonotary and Clerk of Courts on May 24, 2011. However, on the trial court's order, the prothonotary wrote that notice of the docketing was sent to the parties on May 25, 2011. Thus, the order was entered on May 25, 2011. *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1120 (Pa. Super. 2004) ("an order is 'entered' when it has been docketed and notice of the docketing has been given to the parties").

[5] Appellants agreed that Count 6 should be dismissed and "stipulate[d] that their jury trial demand [did] not extend to their [Count 5 (bad faith)] claim." Appellants' Answer to Erie Insurance's Preliminary Objections, 12/17/10, at ¶¶ 19 and 33.

As can be discerned from the above, the trial court's May 25, 2011 order did not "dispose[] of all claims and of all parties" and, thus, the order was not final and appealable. *See* Pa.R.A.P. 341(a) and (b)(1). Indeed, Appellants still had viable claims against all parties to the litigation. Appellants, however, desired to immediately appeal the May 25, 2011 order. Therefore, on June 15, 2011, Appellants filed with the trial court an "Application for Determination of Finality of Order in Accordance with Pa.R.A.P. 341(c)" (hereinafter "Appellants' Application for Determination of Finality"). Relying upon Pennsylvania Rule of Appellate Procedure 341(c), Appellants requested that the trial court amend its May 25, 2011 order and make an "express determination that an immediate appeal would facilitate resolution of the entire case." Appellants' Application for Determination of Finality, 6/15/11, at 3; Pa.R.A.P. 341(c). Pursuant to Pa.R.A.P. 341(c), such amendment would cause the order to become final and "appealable when entered." Pa.R.A.P. 341(c).

The trial court acceded to Appellants' request and, in an order dated June 24, 2011, the trial court amended its May 25, 2011 order to declare: "[t]his is a [f]inal [o]rder because the [c]ourt expressly determines that an

immediate appeal would facilitate the resolution of the entire case." Trial Court Order, 6/27/11, at 1.[6]

Appellants filed a timely notice of appeal and Appellants raised the following claims to this Court:[7]

> 1. Does the "gist of the action" doctrine bar [Appellants'] recovery on their negligence claim against Erie Insurance . . . where that claim is not based on the insurance contract itself, but rather, upon independent affirmative acts and omissions by the [i]nsurer and its expert agent/contractor in summarily dismissing, without analysis, that mold infestation at their home was not dangerous?
>
> 2. Where [Appellants] alleged wanton, willful and reckless conduct by representatives of Rudick [Engineering] . . . in summarily dismissing, without analysis, that the mold infestation at their home was not dangerous, was it error for the [t]rial [c]ourt to dismiss [Appellants'] punitive damage claim at the pleading stage?
>
> 3. Where [Pa.R.C.P. 1042.1 *et seq.*] requires only a patient or client of a negligent professional to file a certificate of merit, did the [t]rial [c]ourt improperly dismiss [Appellants'] professional negligence claim against Rudick [Engineering] under circumstances in which [Appellants] were neither patients nor clients of Rudick [Engineering], but rather

---

[6] Pa.R.A.P. 341(c) demands that the trial court "act" on an application for a determination of finality "within 30 days of entry of the order." Pa.R.A.P. 341(c)(1). As this Court has explained, the trial court entered its original order on May 25, 2011. **See supra** n.5. The trial court then "acted" on Appellants' application for determination of finality – *i.e.* signed the amended order – on June 24, 2011. Since June 24, 2011 was the 30th day following entry of the original order, the trial court's certification was timely.

[7] The trial court ordered Appellants to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellants timely complied and preserved the four issues currently raised before this Court.

third-party beneficiaries of a contract between Rudick [Engineering] and Erie [Insurance]?

4. Did the [t]rial [c]ourt abuse its discretion where it refused to grant leave of court for [Appellants] to amend their [c]omplaint to replead their punitive damage claim and to extend the time for filing their [c]ertificate of [m]erit against Rudick [Engineering], where the case was in the pleading stage, the requests were timely, no party would be prejudiced and [Appellants] reasonably believed that they were not required to file a [c]ertificate of [m]erit based on the plain language of the Rule?

Appellants' Brief at 6-7.

When the appeal first came before this Court, we affirmed the trial court's order in part, vacated the order in part, and remanded the case. Specifically, we held: 1) that the trial court properly dismissed Appellants' negligence claim against Erie Insurance because the gist of the action doctrine barred Appellants' negligence claim; 2) that the trial court properly dismissed Appellants' punitive damages claim against Rudick Engineering because Appellants did not plead sufficient facts to support an award of punitive damages; 3) that the trial court erred when it denied Appellants' motion for leave to amend their complaint, to properly plead their entitlement to punitive damages; and, 4) that the trial court properly dismissed Appellants' professional negligence claim against Rudick Engineering, as Appellants failed to file a certificate of merit. *Bruno v. Erie Ins. Co.*, 55 A.3d 131 (Pa. Super. 2012) (unpublished memorandum) at 13-29.

Following our decision, Appellants filed a petition for allowance of appeal with our Supreme Court, wherein they raised the following issues:

> 1. Does the "gist of the action" doctrine bar recovery on [Appellants'] negligence claim against Erie Insurance [] where their claim was not based on the underlying insurance contract or [Erie Insurance's] obligations thereunder, but instead upon independent, affirmative, and gratuitous acts and omissions of [Erie Insurance] and its expert agent/ contractor when they summarily and without analysis or testing told Mr. Bruno that the mold infestation in the home was not dangerous and described the dangers of mold as a media exaggeration?
>
> 2. In promulgating Rule 1042.1 et seq. of the Pennsylvania Rules of Civil Procedure, did [the Pennsylvania Supreme Court], by the plain language used, require that only patients or clients of a negligent professional be obligated to file a Certificate of Merit, and was it therefore error for the Courts below to dismiss [Appellants'] professional negligence claim against [Rudick Engineering], because they were neither patients nor clients of [Rudick Engineering]?

*See Bruno v. Erie Ins. Co.*, 74 A.3d 1027 (Pa. 2013).

Our Supreme Court granted Appellants' petition for allowance of appeal and, in its opinion, the Supreme Court reversed this Court on both issues. First, the Supreme Court held "that [Appellants'] negligence claim was not barred by the gist of the action doctrine, as the claim was based on an alleged breach of a social duty imposed by the law of torts, and not a breach of a duty created by the underlying contract of insurance." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 50-51 (Pa. 2014). In arriving at this conclusion, our Supreme Court reasoned:

- 13 -

The homeowners' policy required Erie [Insurance] to pay up to $5,000 to [Appellants], when their home sustained a direct physical loss as the result of mold, for the cost of: (1) removing the mold, including tearing out or replacing parts of the property in order to gain access to the mold; (2) testing the air inside the property, or the property itself, to confirm the presence of mold; and (3) any increased expenses incurred by [Appellants] to maintain their standard of living, if the subject property was rendered uninhabitable by the mold. [Appellants'] claim against Erie [Insurance] for its alleged actions at issue in this appeal, quite simply, is not based on [Erie Insurance's] violation of any of these contractual commitments. [Appellants] do not allege that Erie [Insurance] failed to pay the $5,000 it was obliged to pay by the policy for the costs of testing and remediation of damage to the property, and, indeed, the parties agree that Erie [Insurance] did, in fact, pay [Appellants] the $5,000 it owed under the policy for these purposes.

Instead, [Appellants'] claim against Erie [Insurance] is predicated on the allegedly negligent actions taken by its agents on behalf of Erie [Insurance] **while** they were performing [Erie Insurance's] contractual obligation to investigate the claim made by [Appellants] under their policy in order to determine if the mold discovery triggered any of [Erie Insurance's] aforementioned payment obligations. Specifically, as recounted *supra,* [Appellants] asserted in their complaint that [Erie Insurance's] agents, while conducting the claim investigation, were negligent for: rendering unfounded advice to [Appellants] that the mold was "harmless," denying the potential for adverse human health consequences posed by [Appellants'] exposure to the mold; and telling them that they "should continue tearing out the existing paneling." [Appellants] further aver that, because of this advice and recommendation, they proceeded with the removal of the basement paneling, which later led to them suffering health problems from the mold exposure, and their entire house being rendered uninhabitable such that it had to be destroyed.

Accordingly, while Erie [Insurance] had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by

- 14 -

mold, the substance of [Appellants'] allegations is not that it failed to meet these obligations; rather, it is that Erie [Insurance], during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to [Appellants] that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern [Erie Insurance's] alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between [Appellants] and Erie [Insurance], during the existence of which Erie [Insurance] allegedly committed a tort.

*Id.* at 70-71 (internal citations omitted) (emphasis in original).

Further, with respect to Appellants' second claim on appeal, the Supreme Court held that "[Appellants] were not required to obtain a certificate of merit in order to proceed with their negligence suit against the professional engineer, since they were not patients or clients of the engineering company which employed him." *Id.* at 50-51.

The Supreme Court thus reversed our order. However, the Supreme Court remanded the case to this Court, so that we could consider whether Appellants' negligence claim against Erie Insurance is "otherwise legally cognizable." *Id.* at 71. We conclude that, as pleaded in Appellants'

complaint, Appellants' negligence claim is cognizable under Sections 323 and

324A of the Restatement (Second) of Torts.[8]

We have stated:

> A preliminary objection in the nature of a demurrer is properly [sustained] where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus

---

[8] Within Erie Insurance's brief to this Court on remand, Erie Insurance notes that, in our original memorandum, we declared that Appellants' claim was not independently cognizable under Section 323 of the Restatement (Second) of Torts. Erie Insurance's Brief at 14; *see also Bruno v. Erie Ins. Co.*, 55 A.3d 131 (Pa. Super. 2012) (unpublished memorandum) at 18. Our earlier ruling was based upon our conclusion that the claims pleaded in Appellants' complaint were **contractual** in nature – and not tortious; therefore, the gist of the action doctrine subsumed Appellants' negligence claims. *Id.* However, our Supreme Court later held that Appellants' "negligence claim was not barred by the gist of the action doctrine, as the claim was based on an alleged breach of a social duty imposed by the law of torts, and not a breach of a duty created by the underlying contract of insurance." *Bruno*, 106 A.3d at 50-51. Specifically, our Supreme Court held, Appellants' complaint pleaded that "Erie [Insurance], during the course of fulfilling [its contractual] obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to [Appellants] that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances." *Id.* at 70-71.

of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the [preliminary objections] will result in the denial of claim or a dismissal of suit, [the preliminary objections may be sustained] only where the case [is] free and clear of doubt.

*Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 966 (Pa. Super. 2009) (internal citations, quotations, and corrections omitted).

Section 323 of the Restatement (Second) of Torts is entitled "negligent performance of undertaking to render services" and provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323; *see also DeJesus v. Liberty Mut. Ins. Co.*, 223 A.2d 849 (Pa. 1966) (adopting section 323 of the Restatement (Second) of Torts). As the comment to section 323 explains,

Section [323] applies to any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other's person or things. It applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his

- 17 -

failure to exercise reasonable care to complete it or to protect the other when he discontinues it.

Restatement (Second) of Torts § 323 cmt.

Section 324A of the Second Restatement of Torts is entitled "liability to third person for negligent performance of undertaking;" it declares:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A.

The comment to Section 324A explains that the rule "parallels the one stated in § 323, as to the liability of the actor to the one to whom he has undertaken to render services. [Section 324A] deals with the liability to third persons." Restatement (Second) of Torts § 324A cmt.

As our Supreme Court ably summarized, Appellants' complaint pleaded that:

> Erie [Insurance], during the course of fulfilling [its contractual] obligations through the actions of its agents, acted in a negligent manner by making false assurances [to David Bruno] regarding the toxicity of the mold and affirmatively recommending to [Appellants] that they

- 18 -

continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances.

***Bruno***, 106 A.3d at 70-71.

As to David Bruno, the above allegations state a claim for negligence under Section 323 and, as to Angela Bruno, Anthony Gotti Bruno, and McKayla Marie Blake, the above allegations state a claim for negligence under Section 324A. Appellants' complaint pleaded that (through its agent) Erie Insurance: voluntarily "undertook to render services to" David Bruno (since Erie Insurance voluntarily and affirmatively took on the duty to advise David Bruno "regarding the toxicity of the mold and affirmatively recommending to [Appellants] that they continue their renovation efforts"); Erie Insurance should have "recognize[d] [that the services were] necessary for the protection of" David Bruno and his family (since the advice was voluntarily rendered by individuals who were hired to analyze the homeowners' mold, given to the layperson homeowners, and concerned an alleged toxic substance in their home); Erie Insurance allegedly failed to exercise reasonable care when it provided the advice; and, Appellants suffered physical harm as a result of Erie Insurance's breach (in that Erie Insurance's alleged "failure to exercise [reasonable] care increase[d] the risk of [Appellants'] harm" and "the harm [Appellants] suffered [was because of their] reliance upon [Erie Insurance's] undertaking." ***See*** Restatement (Second) of Torts §§ 323 and 324A(a) and (c).

Therefore, since Appellants' negligence claim against Erie Insurance is "otherwise legally cognizable," we vacate the trial court's order and remand for further proceedings.[9]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2015

---

[9] In **Bruno**, our Supreme Court held that "[Appellants] were not required to obtain a certificate of merit in order to proceed with their negligence suit against the professional engineer, since they were not patients or clients of the engineering company which employed him." **Bruno**, 106 A.3d at 51. Hence, we vacate the portion of the trial court's order which dismissed Appellants' professional negligence claim against Rudick Engineering.

We further note that the parties did not appeal our earlier determinations: 1) that the trial court properly dismissed Appellants' punitive damages claim against Rudick Engineering because Appellants did not plead sufficient facts to support an award of punitive damages, but 2) that the trial court erred when it denied Appellants' motion for leave to amend their complaint, to properly plead their entitlement to punitive damages. **See Bruno v. Erie Ins. Co.**, 55 A.3d 131 (Pa. Super. 2012) (unpublished memorandum) at 13-29. Thus, our earlier determinations remain undisturbed in the wake of our Supreme Court's opinion in **Bruno**.