J-S49028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NEW CENTURY BANK D/B/A CUSTOMERS BANK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| 1265 INDUSTRIAL BOULEVARD, LLC, GELT FINANCIAL CORP., GELT PROPERTIES, LLC, H. JACK MILLER, URI SHOHAM AND ARI MILLER | |
| v. | |
| NEW CENTURY BANK D/B/A/ CUSTOMERS BANK, RICHARD A. EHST, THOMAS J. JASTRUM, JR., RICHARD F. NAPIERKOWSKI, JOHN DOES NUMBERS 1 AND 2 | |
| APPEAL OF: 1265 INDUSTRIAL BOULEVARD, LLC, GELT FINANCIAL CORP., GELT PROPERTIES, LLC, H. JACK MILLER, URI SHOHAM AND ARI MILLER | No. 3287 EDA 2015 |

Appeal from the Order Dated September 18, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): July Term, 2011, NO. 00591

BEFORE: PANELLA, OLSON, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.: **FILED AUGUST 10, 2016**

Appellants, 1265 Industrial Boulevard, LLC; Gelt Financial Corp.; Gelt

Properties, LLC; H. Jack Miller; Uri Shoham; and Ari Miller,[1] appeal from the

---

[1] Collectively, we shall refer to all Appellants as "Appellants" and we shall refer to the individual Appellants by their given first names "Jack," "Uri," and "Ari," respectively.

---

*Former Justice specially assigned to the Superior Court.

September 18, 2015 order[2] granting summary judgment in favor of New Century Bank, now known as Customers Bank, ("NCB") on its original affirmative claims and on all counterclaims and third-party claims asserted by Appellants against NCB; Richard A. Ehst; Thomas J. Jastrum, Jr.; Richard F. Napierkowski; and John Does 1 and 2.[3]  We affirm.

_____

[2] Although the trial court's order granting summary judgment is dated September 17, 2015, it was not docketed until September 18, 2015.  We have changed the caption to reflect this correction.

[3] The procedural posture of this case has complicated our review because of the parties' failure to follow the Pennsylvania Rules of Civil Procedure.  This action was commenced by a complaint filed by NCB, only, against Appellants.  On November 15, 2011, Appellants filed a document entitled "Answer to Amended Complaint[,] New Matter[,] and Counterclaim" ("first amended answer").  In the caption of the first amended answer, Appellants named new parties to the action, *i.e.*, Richard A. Ehst, Thomas J. Jastrum, Jr., Richard P. Napierkowski, and John Does Numbers 1 and 2 ("individual defendants").  The individual defendants were employees of NCB and are identified in the first amended answer as "Counterclaim Defendants".  First Amended Answer at ¶s 44-53.  The first amended answer then asserts "counterclaims" against NCB and the individual defendants.  *Id.* at ¶s 101-145 (Count I against NCB for breach of contract; Count 2 against NCB and the individual defendants for intentional interference with contractual relations; Count 3 against NCB and Richard P. Napierkowski for fraud; Count 4 against NCB and Richard Ehst for intentional infliction of emotional distress; Count 5 against NCB for intentional infliction of emotional distress; Count 6 against NCB and Richard Ehst for assault; Count 7 against NCB and the individual defendants for conspiracy; Count 8 against NCB and the individual defendants for Civil RICO).  This pleading failed to comply with the Rules of Civil Procedure.

Rule 2252 of the Pennsylvania Rules of Civil Procedure details the manner in which a party who is not an original party to the action may be joined as an additional defendant.  **See** Pa.R.Civ.P. 2252, Explanatory Comment-2007 ("Rule 2252(a) has been amended to limit the rules governing joinder of additional defendants to the joinder of **persons not already parties to an**
*(Footnote Continued Next Page)*

**action**"). (emphasis added). Under Rule 2252(a), "any party may join as an additional defendant any person not a party to the action who may be (1) solely liable on the underlying cause of action against the joining party, or . . . (4) liable to or with the joining party on any cause of action . . . upon which the underlying cause of action against the joining party is based." The Rule goes on to provide that "[t]he joining party may file as of course a praecipe for writ or a complaint." Pa.R.Civ.P. 2252(b). The complaint must comport "in the manner and form required of the initial pleading of the plaintiff in the action". Pa.R.Civ.P. 2252(b)(2). Thus, the complaint to join additional defendants must contain a notice to defend and must be properly served in accordance with the rules governing original process. None of this occurred. Instead, Appellants merely filed their first amended answer which named the individual defendants as "Counterclaim Defendants" and asserted various causes of action against them. Under Rule 2252, the individual defendants should have been brought into this action by the filing of a complaint to join additional defendants. However, neither NCB nor the individual defendants objected to the manner in which the individual defendants were joined and the case proceeded under the improper assumption that NCB and the individual defendants were "Counterclaim Defendants".

Moreover, the parties and the trial court improperly referred to all of Appellants' claims against NCB and the individual defendants as "counterclaims". The claims asserted by the Appellants against NCB, the original plaintiff, are counterclaims. Pa.R.Civ.P. 1031(a) ("The defendant may set forth in the answer under the heading "Counterclaim" any cause of action cognizable in a civil action which the defendant has against the plaintiff…".). The claims against the individual defendants (who are technically additional defendants) are third-party claims.

The case was further complicated by the Appellants filing of an "Amended Answer to Amended Complaint, New Matter, Counterclaim and Cross[-] Claim" ("second amended answer") on January 6, 2012 in which the Appellants continued to name NCB and the individual defendants as "Counterclaim Defendants". Second Amended Answer at pp. 10-11. The second amended answer asserted under the title "Counterclaims" the same claims set forth in Counts 1 through 8 of the first amended answer and added three additional counts against NCB and the individual defendants for fraudulent inducement (Count 9), breach of the duty of good faith and fair dealing (Count 10) and abuse of process (Count 11). *Id.* at 10-30. Again, the claims against NCB are counterclaims and the claims against the
*(Footnote Continued Next Page)*

The trial court summarized the relevant factual background and procedural history as follows:

> This matter arises from a series of financial transactions between [NCB, Appellants], and their predecessors in interest, all of whom are sophisticated parties in the financial world.
>
> The [central] transaction at issue is a loan of $500,000[.00] made by [NCB] to [Appellants].  This loan was memorialized in a [p]romissory [n]ote ("1265 Note") dated April 28, 2010, and secured by a [m]ortgage on the property at 1265 Industrial Boulevard, and [a]ssignment of [r]ents on that property, and [p]ersonal [g]uarantees of [Appellants] Jack, Uri, and Ari.
>
> [The 1265 Note] states, "Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in 59 regular payments of $3,831.43 and one irregular last payment estimated at $434,092.91."
>
> The Guarantees state:
>
> > If lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall now (unless specifically provided below to the contrary) affect or invalidate any other guaranties.  Guarantor's liability shall be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

_(Footnote Continued)_ ───────────

individual defendants are third-party claims.  There are no cross-claims. Cross-claims are "claim[s] asserted between codefendants or coplaintiffs in a case".  **Black's Law Dictionary**, (Eighth Edition, 2004).  *See* Pa.R.Civ.P. 1031.1.  As Appellants and the individual defendants are not codefendants (instead, Appellants are defendants and the individual defendants are technically additional defendants), the claims filed by Appellants against the individual defendants are not cross-claims.

On May 9, 2011, NCB demanded payment and placed the loan in default.

One of the other transactions was a "[r]evolver [l]oan" of $2.5 million, entered into by the parties and their predecessors in interest, Gelt Business Credit and Interstate Net Bank ("ISN"). That [n]ote [("ISN Note")] was signed by Uri and Jack and was also secured by personal guarantees from Uri, Jack, and Ari. ISN was taken over by the Federal Deposit Insurance Corporation and purchased by [NCB]. Demand was made on this [r]evolver [l]oan on April 23, 2008. When payment was not made, the loan was placed in default.

Another transaction in which the parties were involved, the Allied Healthcare transaction, appears to have involved significant bad feelings among the parties. [Appellants] allege that an employee of NCB, [c]ounterclaim [d]efendant [*sic*][4] Richard Ehst, threatened to burn down the houses of Uri, Jack, and Ari in a phone conversation related to the transaction.

NCB filed the instant claim for breach of the [note] on July 8, 2011. A confession of judgment was filed on May 18, 2011, and discontinued on September 22, 2011. A related action in mortgage foreclosure is pending in Bucks County. The matter was deferred due to the bankruptcy of Gelt Financial Corporation, then reinstated in January, 2014. [Appellants] filed an [a]nswer [to NCB's original complaint in this case] and [c]ounterclaims against NCB, as well as against Richard A. Ehst, Thomas J. Jastrum Jr., Richard F. Napierkowski, and John Does 1 and 2 ("[c]ounterclaim d]efendants") [*sic*] [5], all of whom are employees of NCB. NCB filed for summary judgment on both its claims and on [Appellant's c]ounterclaims [*sic*].[6]

Trial Court Opinion, 9/17/2015, at 1-3. This timely appeal followed.[7]

---

[4] *See* Footnote 3, *supra*.

[5] *See* Footnote 3, *supra*.

[6] *See* Footnote 3, *supra*.

*(Footnote Continued Next Page)*

Appellants raise one issue for our review:

Whether genuine issues of material fact exist [that] preclude the entry of judgment as a matter of law, including whether genuine issues of material fact exist with regard to [Appellants'] counterclaims [*sic*][8][?]

Appellants' Brief at 2.

We may reverse an order granting summary judgment if there has been an error of law or abuse of discretion. **Weaver v. Lancaster Newspapers, Inc.**, 926 A.2d 899, 902 (Pa. 2007), *citing* **Fine v. Checcio**, 870 A.2d 850, 857 (Pa. 2005). The issue of whether there are no genuine issues of material fact presents a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary. **Id.** at 902-903. The initial burden for a motion for summary judgment is on the moving party and the trial court must examine the record in the light most favorable to the nonmoving party. **Preferred Fire Protection, Inc. v. Joseph Davis, Inc.**, 954 A.2d 20, 25 (Pa. Super. 2008) (citation omitted). The moving party has the burden at the trial court level to establish that no genuine issues of material fact exist. **Id.** This burden, however, shifts to the nonmoving party once the moving party makes the requisite showing; the

*(Footnote Continued)* ────────────

[7] Appellants filed a notice of appeal on October 19, 2015. The trial court then issued an opinion referring to its September 17, 2015 order and opinion, which set forth the court's reasons for granting summary judgment in favor of NCB.

[8] **See** Footnote 3, **supra**.

- 6 -

nonmoving party then "may not rest upon the allegations or denials contained in the pleadings, but must respond by showing there is a genuine issue for trial." ***Id.*** In our review, we are not bound by the trial court's conclusions of law and may draw our own inferences and conclusions. ***Id.***

Appellants first argue that there are genuine issues of material fact regarding whether NCB lacks standing to assert its affirmative claims against Appellants, alleging NCB is not a legal entity. Appellants' Brief at 15. Appellants, however, have not shown any support in the record for this contention. NCB simply changed its name to Customers Bank. The trial court noted that NCB and Customers Bank are the same entity and the 1265 Note was transferrable. Trial Court Opinion, 9/17/2015, at 1, 5. Further, even if Customers Bank were a new entity and was merely a successor, the 1265 Note clearly states that its terms are for the benefit of the lender and its successors and assigns. ***See*** 1265 Note. Accordingly, there are no genuine issues of material fact as NCB/Customers Bank has standing to bring this action.

Next, Appellants allege there are genuine issues of material fact regarding whether Appellants were absolved of obligations under the 1265 Note as a result of NCB's material breach. Appellants' Brief at 16. Appellants' claim rests on the contention that when a bank and borrowing parties have a longstanding relationship, the lending institution owes the borrower a duty of good faith. ***CoreStates Bank, N.A. v. Cutillo***, 723 A.2d

1053 (Pa. Super. 1999). Specifically, Appellants contend that NCB materially breached its duty of good faith when it demanded repayment in full of the 1265 Note at a time when Appellants were making timely payments on the loan. Appellants' Brief at 18.

A material breach relieves the non-breaching party of its duty to perform under the contract. ***McClausland v. Wagner***, 78 A.3d 1093, 1101 (Pa. Super. 2013). However, a lender generally has not violated the duty of good faith merely because it adhered to its lending agreements with a borrower or enforced its contractual rights as a creditor. ***CoreStates Bank***, 723 A.2d. at 1059.

There was no material breach here. The 1265 Note contains a pay-on-demand clause which states "[b]orrower will pay the loan in full immediately upon [l]ender's demand." 1265 Note. Pay on demand clauses have been statutorily defined by Article 3 of the Uniform Commercial Code of Negotiable Instruments. ***See*** 13 Pa.C.S.A. §§ 3101 *et seq*. We have found UCC Article 3 applies to notes secured by a mortgage and assignment of rents. ***See Manor Bldg. Corp. v. Manor Complex Assoc., Ltd.***, 645 A.2d 843 (Pa. Super. 1994). A promise is payable on demand if it: "(1) states that it is payable on demand or . . . otherwise indicates that it is payable at the will of the holder; or (2) does not state any time of payment." 13 Pa.C.S.A. § 3108(a). Further, a promise is still payable on demand if a fixed date is also included and payment is demanded before such date. 13

Pa.C.S.A. § 3108(c) ("[i]f an instrument, payable at a fixed date, is also payable upon demand made before the fixed date, the instrument is payable on demand until the fixed date and, if demand for payment is not made before that date, becomes payable at a definite time on the fixed date"). Therefore, NCB was not in breach when it demanded payment before the end of the fixed term included in the note.

NCB was within its contractual rights to demand payment on the 1265 Note at any time and doing so did not constitute a material breach, even if Appellants were current on payments. There is nothing in the record to support Appellants' assertion that the terms of the note were unilaterally changed by NCB. Because there was no material breach, Appellants were not relieved of the duty to pay under the note. Accordingly, the trial court did not abuse its discretion in finding that there was no genuine issue of material fact. Even if NCB owed Appellants a duty of good faith because of their long-standing relationship, NCB merely exercised its rights under the parties' agreement.

Turning to Appellants counterclaims against NCB and third-party claims against the individual defendants, Appellants first argue that summary judgment is not proper because NCB was the party that filed the motion for summary judgment and NCB cannot challenge the claims brought against the individual defendants. Appellants' Brief at 23. All actions must be brought in the name of the "true party in interest." Pa.R.C.P. 2002. A

party who is not negatively affected by the matter he challenges "is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003). Here, NCB is a true party in interest with respect to all of the counterclaims asserted against it. Moreover, NCB was named in all of the claims in which individual defendants were named. Thus, NCB clearly had the authority to seek summary judgment as to each of the 11 claims that Appellants asserted in their second amended answer. In reviewing the motion for summary judgment and supporting brief, it is clear that arguments were made on behalf of NCB and the individual defendants.[9] It

_____

[9] This issue highlights the problems that we confronted due to the procedural morass in which this case finds itself. Even though the individual defendants were never properly joined to this action, counsel for the parties proceeded as if they were original codefendants or plaintiffs against whom cross-claims or counterclaims were filed. Thus, for example, no praecipe for entry of appearance was ever filed by counsel on behalf of the individual defendants. Instead, on February 3, 2012, counsel for NCB filed a pleading entitled "Plaintiff, [NCB], Answer to Counterclaim and New Matter" which begins with the statement "Plaintiff, [NCB], by way of [a]nswer to [c]ounterclaim, hereby states as follows…". Answer to Counterclaim and New Matter, p. 1. Yet, in each "Wherefore" clause discussing the counts brought against NCB and the individual defendants, counsel states that NCB **and** the individual defendants demand judgment in their favor and dismissal of the particular counterclaims. *Id.* at 8-16. This pleading practice continued throughout the case. Pleadings were filed (including the motion for summary judgment) that appeared to be filed only on behalf of NCB; however, when the pleadings are reviewed, they address the claims filed by Appellants against both NCB and the individual defendants. At no time did Appellants object. We acknowledge that the proper procedure would have been to file the pleadings, including the motion for summary judgment, on behalf of NCB and the individual defendants. However, we have little

*(Footnote Continued Next Page)*

is also clear that there were no genuine issues of material fact with respect to any of the claims brought against NCB or the individual defendants. Thus, we find this argument lacks merit.

We next turn to Appellants' substantive objections to the order granting summary judgment and dismissing the claims Appellants asserted against NCB and the individual defendants. Appellants argue that NCB and the individual defendants were not entitled to summary judgment on these claims as genuine issues of material fact exist. Appellants' Brief at 24. Before we turn to the merits of these arguments, we first address Appellants' assertion that *res judicata* does not apply to the instant case. The doctrine of *res judicata* prevents re-litigation of issues where a prior judgment has been decided on the merits. **Matternas v. Stehman**, 642 A.2d 1120, 1123 (Pa. Super. 1994). To invoke *res judicata*, both the former and latter actions must possess four elements in common: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued. **Id.** First, we note that not all parties in this action were present in the Bucks County action, namely, Uri, Jack, and Ari. Further, the Bucks County litigation centered upon a mortgage foreclosure action,

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

sympathy for the Appellants as they created this problem by failing to follow the rules when adding the individual defendants to this case.

whereas this action concerns the 1265 Note and subsequent tort claims. Accordingly, *res judicata* does not apply in the instant action.

In their first counterclaim against NCB, Appellants argue that NCB breached its contract by demanding payment on the 1265 Note. To show a breach of contract, Appellants must establish: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." **McCausland**, 78 A.3d at 1101, *citing* **Hart v. Arnold**, 884 A.2d 316, 332 (Pa. Super. 2005). However, there is no evidence in the record that NCB breached its contractual obligations. As stated previously, the 1265 Note was a pay-on-demand note, which allowed NCB to demand full payment on the note at any time, regardless of Appellants' payment status. We cannot find a breach of contract simply because NCB exercised its rights under the agreement. Further, exercising rights granted under the contract does not breach the implied duty of good faith. Accordingly, the trial court did not abuse its discretion and correctly granted summary judgment in NCB's favor.

Appellants also argue that NCB and the additional defendants are not entitled to summary judgment on the claim of intentional interference with contractual relations. Appellants' Brief at 34. Appellants allege NCB and its employees interfered with Appellants' contracts with their leaseholders by putting the 1265 Note into default. Amended Answer at 20. The four elements needed to establish a claim for intentional interference with

contractual relations are: "(1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of [NCB] to harm [Appellants] by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of [NCB] and; (4) the occasioning of actual damages." **_Walnut St. Assoc., Inc. v. Brokerage Concepts, Inc._** 982 A.2d 94, 98 (Pa. Super. 2009), *aff'd*, 20 A.3d 468 (Pa. 2011). Appellants offer no evidence showing that NCB or the individual defendants intended to harm them by interfering with a contractual relationship. Further, the trial court correctly found that placing the loan into default status was justified, since Appellants failed to pay in full upon demand. Accordingly, the trial court did not err in granting summary judgment on this claim.

Next, Appellants argue summary judgment was improper on their claim for intentional infliction of emotional distress ("IIED") against NCB and Richard Ehst, the Chief Operating Officer of NCB. Appellants' Brief at 35. To succeed on an IIED claim: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." **_Hoy v. Angelone_**, 691 A.2d 476, 482 (Pa. Super. 1997), *citing* **_Hooten v Penna. College of Optometry_**, 601 F.Supp. 1151, 1155 (E.D. Pa. 1984). **_See also_** Restatement (Second) of Torts § 46. Our courts have recognized a cause of action for IIED, but "we have allowed recovery in only very egregious

cases." **Hoy**, 691 A.2d at 482. It is upon the courts to determine if conduct is extreme and outrageous enough to warrant recovery. **Swisher v. Pitz**, 868 A.2d 1228, 1231 (Pa. Super. 2005).

Here, the alleged outrageous and extreme conduct was NCB's agent, Ehst, threatening over the telephone to burn down all the homes of those involved in the failed Allied Healthcare transaction. Appellants contend NCB is jointly and severally liable for the actions of Ehst. Second Amended Answer at 23. While Ehst's threat was certainly offensive, the trial court did not err in holding it did not rise to the level of extreme or outrageous conduct which permitted recovery. The level of conduct required for recovery is very high; even threats of immediate physical harm may not be sufficient to meet the threshold for recovery. **See Cucinotti v. Ortman**, 159 A.2d 216, 218 (Pa. 1960). The trial court was correct in granting summary judgment on this claim.

Appellants next argue that summary judgment regarding their assault claim against NCB and Ehst was not warranted. Appellants' Brief at 36. An assault occurs when an actor "intends to cause an imminent apprehension of a harmful or offensive bodily contact." **Sides v. Cleveland**, 648 A.2d 793, 796 (Pa. Super. 1994), *citing* Restatement (Second) of Torts § 21. Threatening words are not sufficient to put a person in reasonable apprehension of injury or offensive touching. **Cucinotti**, 159 A.2d at 217. The actor must be able to carry out the threats immediately and must take

affirmative action to do so. *Id.* Here, the assault stems from the same conduct as the IIED claim, Ehst's telephone call threatening to burn down the homes. The trial court correctly found that this was not an imminent threat. As noted, threatening words are insufficient. Further, there is no evidence in the record that Ehst or any other parties took any affirmative action to carry out this threat after the telephone call. It is not reasonable that Appellants would have been in imminent apprehension and, accordingly, the trial court did not err in granting summary judgment.

Appellants next argue that NCB and the individual defendants were not entitled to summary judgment on Appellants' conspiracy claim. A civil conspiracy is: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McKeeman v. Correstates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000), *citing McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. 1998). Appellants allege that NCB and the individual defendants conspired to unlawfully deprive them of property by placing the 1265 Note in default. However, without a cause of action for a particular act, a claim for conspiracy cannot succeed. *McKeeman*, 751 A.2d at 660, *citing Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. 1987). Here, Appellants cannot establish the elements of any of the underlying tort claims. They offer no support for

their assertion that NCB placed the note into default "to obtain thousands of dollars more . . . than [it] would have if [it] had accepted monthly payments." Appellants' Brief at 37. Further, NCB was well within its contractual rights to place the 1265 Note in default after Appellants failed to make full payment on demand. Accordingly, Appellants cannot establish a valid conspiracy claim and the trial court was correct in granting summary judgment.

Appellants next argue NCB and the additional defendants violated Civil RICO, 18 U.S.C. §§ 1961-1968. RICO remedies are available to parties who are affected by a pattern of racketeering activity. 18 U.S.C. § 1962(a). Racketeering activity is defined as "any act chargeable under several [] state criminal laws, any act indictable under numerous specific federal criminal provisions, including mail and wire fraud, and any other offense involving bankruptcy, securities fraud or drug-related activities that is punishable under federal law." *Village at Camelback Property Owners Assn. Inc. v. Carr*, 538 A.2d 528, 536 (Pa. Super. 1988) (internal quotations omitted), citing *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 481-482 (1985). RICO specifically prohibits a person from "investing in, acquiring, or conducting the affairs of an enterprise engaged in or affecting interstate commerce by a means of a pattern of racketeering activity," which is defined as "at least two acts of racketeering activity committed within [10] years of each other, one of which [has] occurred since the passage of RICO." *Id.*

Although Appellants allege NCB committed two predicate offenses of extortion under the RICO act, they fail to show any support for these claims, other than the placement of a loan into default status, which was not unlawful. Further, there is nothing in the record to support a RICO claim against the individual defendants. Appellants fail to show how the individual defendants participated in the alleged conduct. Appellants do not present facts or evidence sufficient to show there is a genuine issue of material fact and, accordingly, summary judgment in favor of NCB and the individual defendants was proper.

Appellants further claim that the trial court erred in granting summary judgment because the cross-default of the 1265 Note was improper. Appellants' Brief at 38. Appellants allege no payments were missed on the note. However, as stated previously, the 1265 Note was a demand note and Appellants did not pay the remaining balance on the note when NCB demanded payment. Further, the 1265 Note stated that Appellants' failure to comply with or perform under any other agreements with the lender is an event of default under the note. *See* 1265 Note. Appellants also allege the default was retaliation for the failure of the Allied Healthcare transaction. However, Appellants fail to provide any factual or evidentiary support of this allegation. Appellants list conduct of high-level representatives of NCB, including harassment and threats of violence, but

fail to mention any specific examples or proof of such conduct. Accordingly, this does not warrant reversal of summary judgment.

Lastly, Appellants argue NCB is not entitled to summary judgment because it breached its fiduciary duty to Appellants. Appellants' Brief at 39. However, the trial court correctly found no fiduciary duty existed. The relationship between a borrower and lender does not create a confidential relationship, which is necessary for a fiduciary duty to exist. *Fed. Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. Super. 1979). Appellants merely rely on the fact that the parties have done business for nine years and do not show any significant relationships between the parties outside of borrower and lender. This does not impose a fiduciary duty on NCB and summary judgment was proper.

Appellants have failed to meet their burden to show genuine issues of material fact exist as to any of their claims.[10] Accordingly, the trial court did

_____

[10] In its September 18, 2015 order, the trial court grants summary judgment "to [p]laintiff [PCB] on **all** claims and counterclaims." Trial Court Order, 9/18/15 (emphasis added). In its accompanying opinion, the trial court discusses the appropriateness of summary judgment as to all of the claims asserted by Appellants against PCB and the individual defendants in their second amended answer, including the claims for fraud, fraudulent inducement and abuse of process. Trial Court Opinion, 9/18/15 at 6, 8 and 9. Appellants do not challenge the dismissal of these claims. Thus, any objection to the order granting summary judgment with respect to the claims for fraud, fraudulent inducement and abuse of process is waived. *Hinkal v. Pardoe*, 133 A.3d 738, 740 (Pa. Super. 2016) (*en banc*) (party waives appellate review when issue is not raised in argument section of brief), *citing* Pa.R.A.P. 2119.

not abuse its discretion in granting summary judgment in favor of NCB and the individual defendants.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2016