J-S77018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.L., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 854 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00010

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 855 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00011

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.L., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 856 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00012

IN THE INTEREST OF: T.L., A MINOR     :    IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: E.L., JR., FATHER     :

:    No. 857 MDA 2016

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Wyoming County
Civil Division at No(s):  2014-00013

BEFORE:  PANELLA, OLSON, and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:        **FILED JANUARY 05, 2017**

E.L., Jr. ("Father"), appeals from the orders[1] entered on May 10, 2016, granting petitions filed by Wyoming County Human Services a/k/a Wyoming County Children and Youth Services ("CYS") and involuntarily terminating his parental rights to his four male children: T.L. (born August 2010); D.L., (born November 2009); J.J.L., (born June 2008); and E.L., III, (born March 2007) (collectively "Children").  We affirm.

We previously set forth the factual background and procedural history of this case as follows.

> Father was incarcerated in 2011 after being convicted of possession of a firearm without a license.  In October and

---

* Retired Senior Judge assigned to the Superior Court.

[1] This Court *sua sponte* consolidated the four appeals in this matter.

November 2014, Father was transitioning back to society, living in a halfway house.

Prior to 2011, Children lived with Father and natural Mother, H.M., ("Mother"), as well as K.A.P., Jr., Mother's oldest child from another man. In November 2012, while Father was incarcerated, CYS received a referral that the two oldest children were not enrolled in school and that there were concerns for Children's health and well-being in the home. As a result, in December 2012, Children were removed from Mother's home by CYS. Children have been in the custody of CYS since 2012; Children, along with their half-brother, K.A.P., Jr., have been in the care of F.S. and R.S., ("Foster Parents"), since the summer of 2013.

The court granted a goal change to adoption on January 13, 2014. Father was released from his incarceration one week later, on January 21, 2014. Foster Parents are prospective adoptive parents; they wish to adopt Children, as well as K.A.P., Jr. CYS filed petitions for involuntary termination of Father's parental rights with respect to Children on August 22, 2014.

On November 19, 2014, the trial court granted CYS' petitions and terminated Father's parental rights as to Children. Father lodged an appeal, and this Court found that CYS failed to prove by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), and reversed the termination order. Unbeknownst to [CYS or this Court], during the pendency of that first appeal, Father was re-incarcerated for not following the terms of the halfway house in which he was residing.

On March 7, 2016, CYS filed a second set of petitions seeking involuntary termination of Father's parental rights as to Children. On April 14 and 28, 2016, the trial court held a hearing on these termination petitions. At the hearing, Father testified that he never received notice of this Court's July 2, 2015 decision reversing the trial court's November 19, 2014 termination orders. He also explained that he did not attempt to contact Children or CYS because of the November 19, 2014 order terminating his parental rights. In his brief before this Court, Father concedes that he learned of this Court's July 2, 2015 decision in late-January 2016.

The attorney who represented Father during the first termination proceedings also testified at the termination hearing. He stated that upon receipt of this Court's July 2, 2015 decision he attempted to contact Father, but could not reach him. CYS also requested that Father's attorney provide Father's last known address. Father's attorney provided CYS with the address Father supplied and CYS subsequently attempted to contact Father at that address. At least one letter to Father at that address was signed for by an adult individual who claimed to be Father.

Meagan Janiszweski ("Janiszweski"), the CYS caseworker assigned to the family since the inception of the case testified that, at placement, Children had scabies, dental issues, were behind on their vaccinations, and a couple of the Children had bronchitis. D.L. had bottle rot. Foster Parents have met the medical, dental, and vision care needs of Children. T.L. attends Roslund School, and the other Children attend Evans Falls School. Foster Parents also addressed three of the Children's speech difficulties. Children are excelling in school. Foster Parents properly feed and clothe Children. T.L. and D.L. share a bedroom, and J.J.L. and E.L. share a bedroom. K.A.P., Jr., has his own bedroom at Foster Parents' home.

Children had emotional issues when they were placed with Foster Parents, and have received counseling. Since July 2014, none of the Children [has] requested to see Father. Only E.L. recognizes Father as his natural father. T.L. and D.L. refer to Foster Parents as "mom" and "dad." J.J.L. and E.L. realize that Foster Parents are not their biological parents. Janiszweski testified that a bond has developed between Children and Foster Parents. Children are very attached to Foster Parents. There is no bond between Children and Father at this time. Janiszweski testified that termination of Father's parental rights would be in Children's best interests. Janiszweski also testified there would not be any bond between Children and Father if they were returned to him at this time. Father never requested visitation of Children through CYS after July 2014. CYS would have accommodated such a request. Foster Mother testified that T.L. and D.L. were placed with her and Foster Father in May 2013, and J.J.L. and E.L., III, were placed with them in August 2013. Foster Mother testified that Children have not mentioned Father.

> The trial court also took judicial notice of the evidence presented at the previous termination proceeding. On May 10, 2016, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1,2,5, [and] 8) and (b).[2] This timely appeal followed.[3]

*In re E.L.*, 2016 WL 6542703, *1-2 (Pa. Super. Oct. 28, 2016) (unpublished memorandum) (internal citations, alterations, and ellipsis omitted).

We initially remanded this matter to the trial court and instructed it to undertake an appropriate analysis pursuant to section 2511(b). *See id.* at *3-4. After the trial court issued its Rule 1925(a) opinion containing its section 2511(b) analysis, Father and CYS filed supplemental briefs with this Court. The matter is now ripe for disposition on the merits.

Father raises four issues for our review:

1. Is reversal required where the [trial] court's opinion terminating [Father's] rights: (1) failed to make any findings of fact concerning the needs, welfare, emotional bond, love, comfort, security, and stability of [C]hildren; (2) failed to contain any analysis of the elements of 23 Pa.C.S.A. § 2511 beyond a mere recitation of the language of the statute itself; and (3) where CYS [] failed to produce any testimony or evidence concerning the emotional bond between Father [] and [C]hildren?

2. Did the [trial] court commit an error of law by utilizing a lower standard of proof (preponderance of the evidence) when it conducted an analysis under 23 Pa.C.S.A. § 2511(b)?

---

[2] Although the trial court did not cite the relevant statutory sections, its use of the Adoption Act's language indicates the sections under which the trial court terminated Father's parental rights.

[3] Father and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

- 5 -

3. Did the [trial] court commit an error of law and error of fact when it held that the "last known address" of [Father], for service of process purposes, was a residential address notwithstanding that the [trial] court also found that [Father] was incarcerated by the Department of Corrections throughout these proceedings?

4. Did the [trial] court commit an error of law and violate the doctrine of [l]aw of the [c]ase, when the [trial] court held that the six [] and [12] month time periods of 23 Pa.C.S.A. § 2511, were met, such that [Father] neglected [C]hildren's needs, notwithstanding that during the majority of the time periods in question [Father's] rights were improperly terminated by prior order of the [trial] court, [Father] was directed not to contact [C]hildren by order of the court, and by reason that a prior panel of the Superior Court determined that [Father] was thwarted in his attempts to contact [C]hildren?

Father's Brief at xiii; Father's Supplemental Brief at iv.[4]

We consider Father's first and second issues together. In those issues, Father challenges the sufficiency of the evidence to support the trial court's termination of his parental rights.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

_____

[4] We have re-numbered the issues for ease of disposition.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.

*In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (internal quotation marks and citations omitted).

The trial court terminated Father's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1),(2),(5) and (8), and (b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). We focus our attention on section 2511(a)(2) along with section 2511(b). Those statutory provisions provide that:

(a) General rule.-The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

income, clothing[,] and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511.

The focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. ***In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). As this Court explained:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect[,] or refusal; (2) such incapacity, abuse, neglect[,] or refusal has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied. The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015) (internal quotation marks and citation omitted).

As this Court explained,

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

***In re A.D.***, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

Moreover, a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.***,

797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

In this case, Father's incarceration caused his repeated and continued incapacity to perform his parental duties. Moreover, such incapacity caused Children to be without essential parental care necessary for their physical and mental well-being. As noted above, once Father was incarcerated Children were not enrolled in school, developed health issues, and did not receive required vaccinations. As such, CYS proved the first two elements of section 2511(a)(2) by clear and convincing evidence.

We next turn to the third element of section 2511(a)(2) – whether the causes of Father's incapacity cannot or will not be remedied. This element was the focus of this Court's July 2, 2015 memorandum reversing the first set of termination orders. *See In re E.L.*, 2015 WL 6950102, *9 (Pa. Super. July 2, 2015) (unpublished memorandum). We conclude that the trial court correctly held that the intervening events between the hearing on the first set of termination petitions and the hearing on the second set of termination petitions proved by clear and convincing evidence that Father's incapacity will not be remedied.

At the time of the prior termination hearing, Father was released to a halfway house; however, as noted above, he was again incarcerated at the time of the hearing on the second set of termination petitions. Furthermore,

although Father received notice of this Court's decision in January 2016, he was aware at least 13 months prior to that date that he appealed the trial court's November 19, 2014 termination orders. Father failed to ascertain the status of the appeal during that 13-month time period.

After Father learned of this Court's decision, he failed to take the necessary steps to undertake parental duties. It does not take an extended period of time to send cards, notes, pictures, etc. Even after Father was notified of this Court's decision, he failed to send any such cards, notes, or pictures to Children. In **A.L.D.**, this Court held that a parent must act diligently to undertake full parental responsibilities. **A.L.D.**, 797 A.2d at 337. In this case, Father failed to act diligently. Thus, the trial court properly rejected Father's claims that he wants to be involved in the Children's lives. Thus, the concern expressed by this Court in its July 2, 2015 memorandum, *i.e.*, that there was no evidence that Father would not be able to remedy his incapacity caused by his incarceration and that he could potentially be reunified with the Children, no longer exists.

Moreover, we conclude that this case is more akin to **Adoption of Baby Boy A. v. Catholic Soc. Servs. of Diocese of Harrisburg, Pa., Inc.**, 517 A.2d 1244 (Pa. 1986) than **In Re P.S.S.C.**, 32 A.3d 1281 (Pa. Super. 2011), *appeal denied*, 38 A.3d 826 (Pa. 2012). In **P.S.S.C.**, this Court reversed the termination of parental rights because all of the notices sent to the father were in English and the father spoke only Spanish. This

Court found that the father in **P.S.S.C.** attempted to use the resources available to him in prison; however, there were no resources available to a Spanish speaking father unrepresented by counsel. **Id.** at 1286. In this case, Father had resources available to him in prison, *e.g.*, the prison mail system, which he could utilize to undertake parental responsibilities. He failed to do so.

In **Baby Boy A.**, our Supreme Court affirmed the termination of parental rights of an illiterate father who failed to take advantage of the opportunities available to him in order to undertake parental responsibilities for his son. **Baby Boy A.**, 517 A.2d at 1245-1246. In this case, Father had opportunities to undertake parental responsibilities with Children both prior to the original termination of his parental rights and after learning of this Court's reversal of that order. His prolonged failure to undertake parental responsibilities with respect to Children makes his expression of interest in asserting parental rights non-persuasive.

Father also asserts that CYS made no effort to contact him regarding the result of his previous appeal and failed to make reasonable efforts to reunite him with Children. According to Father, this rendered his failure to care for Children excusable. This argument is without merit. In **In re D.C.D.**, 105 A.3d 662 (Pa. 2014), our Supreme Court held that trial courts are not required to consider reasonable reunification efforts by CYS in relation to a decision to terminate parental rights under section 2511(a)(2).

*Id.* at 675. As such, *In re I.G.*, 939 A.2d 950, 951 (Pa. Super. 2007), the case upon which this Court previously relied to reverse the first set of terminations orders, is no longer applicable to this matter. Instead, the intervening events between the hearings on the first and second sets of termination petitions support the trial court's conclusion that Father's incapacity will not be remedied. Accordingly, we conclude that CYS proved by clear and convincing evidence that section 2511(a)(2) was satisfied.

Having determined that section 2511(a)(2) was satisfied by clear and convincing evidence, we next turn to whether section 2511(b) was satisfied by clear and convincing evidence.

> If the grounds for termination under [section 2511(a)] are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. [Our Supreme Court has] held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal quotation marks and citations omitted).

After a careful review of the record in this matter, we find that there is support for the trial court's factual findings and the trial court's legal

conclusion that termination was in Children's best interest.[5]  Janiszweski's

and Foster Mother's testimony, as set forth in detail above, support the trial

court's finding that the Children's needs and welfare are best served by the

termination of Father's parental rights.  Specifically, with Foster Parents,

_____

[5] Father argues that the trial court applied the wrong legal standard when making its section 2511(b) analysis.  Father contends that the trial court only required CYS to prove that termination was in Children's best interest by a preponderance of the evidence instead of requiring that CYS prove by clear and convincing evidence that termination was in Children's best interest.  Father argues that the trial

> court's use of the preponderance of the evidence standard is apparent in that: (i) the analysis was not performed on a case-by-case basis with each child's needs being treated individually; (ii) the analysis used only the evidence and testimony presented by CYS; and, (iii) the analysis failed to account for testimony presented by CYS as to the role CYS played in preventing contact between Father and [C]hildren.

Father's Supplemental Brief at 2-3.

We ascertain no merit in this argument.  First, there is nothing inherent about a group analysis that leads to the assumption that a preponderance of the evidence standard was used.  Second, we read the trial court's analysis as a determination that evidence presented by CYS established clearly and convincingly that termination was in Children's best interest because of the lack of a bond between Father and Children.  Lastly, as to the role CYS played in preventing Father from contacting the Children, again there is nothing inherent about the lack of discussion regarding CYS' role in informing Father of this Court's prior decision that indicates that the trial court applied the preponderance of the evidence standard.

Instead, we can assume that the trial court applied the correct standard of review as we included it in our decision remanding this case to the trial court.  **See In re E.L.**, 2016 WL 6542703, at *3.  Moreover, as discussed **infra**, we conclude that CYS satisfied its burden of proving termination was in Children's best interest by clear and convincing evidence.

Children are receiving the health care, education, and love that are required for their development. Furthermore, Janiszweski's and Foster Mother's testimony supports the trial court's finding that no bond exists such that the Children would suffer permanent emotional harm if Father's parental rights were terminated.[6] Moreover, it is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *C.L.G.*, 956 A.2d at 1007. Father asked the trial court, and now asks us, to permit him to continue to take advantage of the opportunities presented to him to rejoin society as a functioning parent. We decline Father's invitation. He was given those opportunities in the past and he failed to take advantage of those opportunities. Thus, we conclude that CYS proved that termination was in Children's best interest under section 2511(b). Accordingly, we conclude that there was sufficient evidence to terminate Father's parental rights.

In his third issue, Father argues that he was denied due process of law when he was not notified of this Court's July 2, 2015 decision reversing the November 19, 2014 orders terminating his parental rights as to Children. "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is

---

[6] Father argues that Janiszweski's testimony on the bond Father has with Children was insufficient to prove by clear and convincing evidence that termination was in the best interest of Children. This argument is without merit. The totality of Janiszweski's testimony made obvious the rationale for her opinion that there is no bond between Father and Children.

- 14 -

plenary." ***Commonwealth v. Smith***, 131 A.3d 467, 472 (Pa. 2015). As this Court explained, in order to satisfy the Fourteenth Amendment's right to due process, a parent in a termination proceeding must be able to attend all hearings, present evidence, cross-examine witnesses against him or her, and be represented by counsel. ***In re G.P.-R.***, 851 A.2d 967, 976 (Pa. Super. 2004); ***see also Hallman v. Dep't of Human Servs.***, 630 F. App'x 123, 126 (3d Cir. 2015).

With respect to the instant petitions, there is no dispute that Father attended the termination hearing, presented evidence, cross-examined the witnesses against him, and was represented by court-appointed counsel. Thus, he received all of the process he was due. Moreover, Father's reliance on 23 Pa.C.S.A. § 2513(b) is misplaced. Section 2513(b) requires that a parent receive notice of a termination proceeding at least ten days prior to the hearing on the petition. ***See*** 23 Pa.C.S.A. § 2513(b). In this case, Father concedes that he received notice of the hearing in January 2016, more than 75 days prior to the beginning of the termination hearing in April 2016. ***See*** Father's Brief at 3, *citing* N.T., 4/28/16, at 42-43; ***see also*** N.T., 4/28/16, at 38-39. Thus, section 2513(b)'s notice requirement was satisfied.

Father also argues that the failure to provide him with notice of this Court's July 2, 2015 decision inhibited his ability to exercise his parental duties with respect to Children. This argument is also without merit. Father

concedes that the attorney representing him at the time of this Court's July 2, 2015 decision received notice of this Court's decision. Under Pennsylvania Rule of Appellate Procedure 121(b), "[s]ervice on a party represented by counsel **shall** be made on counsel." Pa.R.A.P. 121(b) (emphasis added). This was accomplished. Moreover, Father knew of his appeal, knew he was represented by counsel in relation to his appeal, and had means to remain in contact with counsel. Accordingly, Father's right to due process of law was satisfied.

In his final issue, Father argues that the trial court violated the law of the case doctrine with respect to its section 2511(a)(1), section 2511(a)(5), and section 2511(a)(8) analysis. Any error in this respect was harmless. "An error is harmless if the court determines that the error could not have contributed to the [outcome of the case]." ***Bensinger v. Univ. of Pittsburgh Med. Ctr.***, 98 A.3d 672, 683 n.12 (Pa. Super. 2014) (internal alterations and citation omitted). As noted above, we conclude that CYS proved by clear and convincing evidence that termination was appropriate under sections 2511(a)(2) and (b). Thus, any error with respect to the section 2511(a)(1), section 2511(a)(5), and section 2511(a)(8) analysis did not impact the outcome of this case. Accordingly, we affirm the orders terminating Father's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2017